Bruce **DODSON**, Attorney in Fact for Subscribers at Casualty Reciprocal Exchange of Kansas City, Missouri, An Inter-Insurance Association, Plaintiff,

v.

Alf **SISCO**, Wayne Kinion, Troy Clark, Ronald Tucker and Glen David Eicher, Defendants.

Civ. A. No. 293.

United States District Court
W. D. Arkansas, Fayetteville Division.
Sept. 30, 1955.

**314**

John H. Joyce, Fayetteville, Ark., Hardin, Barton, Hardin & Garner, Fort Smith, Ark., for plaintiff.

Rex Perkins, Fayetteville, Ark., Daily & Woods, Fort Smith, Ark., Wade & McAllister, Fayetteville, Ark., James L. Langston, Fort Smith, Ark., for defendants.

JOHN E. MILLER, District Judge.

### Statement

This cause was tried to the Court on September 26, 1955, and the Court having considered the arguments and contentions of the parties, along with the evidence adduced by them, now makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

**1.**

The plaintiff is a citizen of the State of Missouri and is engaged in acting as Attorney in Fact for Subscribers at Casualty Reciprocal Exchange of Kansas City, Missouri, which is an inter-insurance association, and is authorized to issue policies of insurance in the State of Arkansas.

The defendants are each citizens of the State of Arkansas and reside in Washington County, Arkansas.

The amount in controversy exceeds the sum of $3,000, exclusive of interest and costs.

**2.**

The plaintiff entered into a contract of public liability insurance with Mrs. L. E. Johnson of Springdale, Arkansas, which was in full force and effect on February 7, 1955. The policy provides that the plaintiff will " * * * pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance, or use of the automobile." The automobile was specifically described in Item 4 of the Declarations as a 1952 Buick Four-Door Sedan, Motor No. 69211505.

Insuring Agreement III is as follows:

"With respect to the insurance for bodily injury liability, and for property damage liability, the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"

**3.**

The insured automobile was involved in a collision on U. S. Highway 71 between the cities of Fayetteville and Springdale in Washington County, Arkansas, on February 7, 1955, while being driven by defendant Glen David Eicher. At the time the defendants Troy Clark and Ronald Tucker were passen-

gers of Eicher in the insured automobile. The insured automobile collided with a pickup truck owned and being driven by defendant Alf Sisco, and the said truck struck a vehicle owned and being driven by defendant Wayne Kinion.

As a result of the collision of the insured automobile with the pickup truck of defendant Sisco and the automobile owned by defendant Wayne Kinion, they made a demand upon the defendant Glen David Eicher and the plaintiff for the payment of a sum of money in excess of $3,000 for injuries and damages which they claimed to have sustained in said collision. The defendant Glen David Eicher has demanded that the plaintiff defend any and all actions which may be instituted by the various claimants against him and make payment of any and all damages which might be adjudged against him arising from the operation of the insured automobile.

### 4.

Under Insuring Agreement II, the plaintiff obligated himself to "defend any suit against the insured alleging such injury, sickness, disease, or destruction, and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but the company may make such investigation, negotiation, and settlement of any claim or suit as it deems expedient."

The prayer of the complaint is "that this court enter a declaratory judgment construing the provisions of the policy of insurance and determine the respective rights and liabilities of the plaintiff and defendants thereunder and under the circumstances of the aforesaid accident and that he have judgment for his costs herein laid out and expended."

### 5.

The defendants Troy Clark, Ronald Tucker, and Glen David Eicher, filed answer through their guardian ad litem appointed by the Court, and each prayed that the complaint of the plaintiff be dismissed.

The defendant Alf Sisco filed answer in which he denied that Glen David Eicher was driving the Johnson automobile without the permission of Mrs. Johnson, and specifically alleged that "at the time of the accident, Glen David Eicher had the permission, express or implied, of Mrs. L. E. Johnson to operate the same."

The defendant Wayne Kinion filed a similar answer, and both defendants Sisco and Kinion prayed that the complaint of plaintiff be dismissed or, in the alternative, "that this court by its judgment declare that the plaintiff's policy covers and insures Glen David Eicher and Mrs. L. E. Johnson and her son, Bobby Johnson, and that the plaintiff is obligated thereunder to defend the claim of this defendant against any one or all of them, and any suit brought asserting same, and to pay any judgment obtained by this defendant by reason thereof against any of said three parties."

### 6.

Robert R. (Bobby) Johnson is the son of the insured, Mrs. L. E. Johnson. He was 19 years old on July 24, 1955. On August 30, 1954, he was inducted into the armed forces of the United States. He returned home on a leave of absence of three or four days duration during the Christmas holidays of 1954. The next time he returned home was about February 6, 1955, the day prior to the happening of the collision between the insured automobile and the vehicles of the defendants Sisco and Kinion.

For two or three years prior to the induction of the son into the armed forces, the insured had permitted him to drive the automobile, but had often told him not to permit anyone else to drive the automobile. The insured had always cautioned her son to drive with care, and the only person who had driven the car to her knowledge, other than members of her own family, was Marvin R. Elkins. On one occasion her son, accompanied by Marvin R. Elkins, a friend of the family, drove the automobile to the airport at Fort Smith, Arkansas, where he boarded a plane to return to

his station in the armed forces, and the automobile was driven from the airport at Fort Smith back to Springdale, the home of the insured, by Elkins. On this occasion Elkins had the permission of either Mr. or Mrs. Johnson to drive the automobile.

It further appears from the testimony that Elkins and the son of the insured were friends, and Elkins often rode in the automobile with the son, but the only time that he ever drove the automobile was on the return trip from the airport at Fort Smith, Arkansas, and on two or three other occasions when he would be in town with the son and it was necessary for the son to go to the bank, post office, or other business establishment, and in order to avoid searching for a parking place, Elkins would drive the car around the block while young Johnson, the son, was attending to his business.

**7.**

Mrs. Johnson, the insured, never had any information or knowledge prior to the date of the accident that the defendant, Glen David Eicher, had ever driven the automobile, and the only testimony concerning the driving of the automobile by the defendant Eicher is that he states that on two or three occasions he had driven the automobile from the school in Springdale down to the business area on some errand, but Mrs. Johnson had no knowledge or information pertaining thereto and had never given her consent or permission to anyone other than her son or members of the family to drive the automobile with the possible exception of the trip from the airport at Fort Smith to Springdale.

**8.**

During the afternoon or early evening of February 7, 1955, Robert R. (Bobby) Johnson and his friend, Marvin R. Elkins, age 18 years, had dates with two young ladies living in Springdale, and they decided to visit a night club situated south of Fayetteville, Arkansas. The arrangement was made between Johnson, Elkins, and the two young ladies for the trip, and after such arrangements were made, the defendant Eicher either suggested that he would like to go with them to the night club or was invited by Johnson. When the time for departure arrived, Johnson drove the automobile to the home of the defendant Eicher, and then he drove to the home of Elkins. Johnson then drove to the home of his "date" and from thence to the home of the "date" of Elkins. He then drove out on highway 71 through the City of Fayetteville, and approximately three miles south to the "Tee Table" night club. They did not enter the "Tee Table" but went from there to the "Rockwood" where all five of them entered, and after drinking some coca colas they began dancing. In a short time, approximately 30 minutes after they arrived at the Rockwood, the defendant Eicher asked Johnson if he might drive the automobile back to Fayetteville to see a young lady and bring her to the "Rockwood". It was thought that the young lady lived in the southwest portion of Fayetteville or a distance of not more than two miles from the "Rockwood". Johnson gave or caused the keys of the car to be given the defendant Eicher, and he left the "Rockwood" presumably on his way to Fayetteville. None of the young people had drunk any intoxicants, and Robert R. Johnson gave his permission to the defendant Eicher to use the automobile for the specific purpose of going to Fayetteville to obtain and to bring back to the night club the young lady in which the defendant Eicher was interested. Eicher drove to the house where he thought the young lady lived, but did not find her and then returned to the highway and drove back to Springdale. After looking for the young lady at Springdale, he met the defendants, Troy Clark and Ronald Tucker, and invited them to enter the automobile and to return with him to the "Rockwood" night club. Whereupon Clark and Tucker and Eicher started on the trip to the "Rockwood" night club, and after they had proceeded south from Springdale the collision between the insured automo-

bile and the vehicles of the defendants Sisco and Kinion occurred on Highway 71.

### 9.

Robert R. Johnson, the son of the insured, was not personally interested in the transportation of the young lady sought by defendant Eicher to the "Rockwood" night club. Johnson had his own date, and according to the testimony of Miss Vonda Robinson, the date of Marvin R. Elkins, they were not staging a "party" but she and the other young lady, Miss Joy Hines, were simply "double-dating" with Johnson and Elkins. Thus, when they arrived at the "Rockwood", the defendant Eicher found himself without a "date" and he concluded he would try to find a "date", and for that purpose obtained permission of Johnson to use the automobile, but the permission given by Johnson was for the specific purpose of driving to Fayetteville, a distance of about two miles. Eicher did not request and did not have permission to drive to Springdale or other places in search of a "date".

### Discussion

In Arkansas, is a person who is allowed to drive an automobile by one who has been given the owner's permission to use the car, an additional insured under the terms of the owner's public liability automobile policy which extends coverage to "any person while using the automobile * * * provided the actual use of the automobile is by the named insured or with his permission"?

■ The author of the annotation in 160 A.L.R. 1195, at page 1206, has summarized the general rules upon which the various decisions on the question are based, as follows:

"1. The original permittee who has been given permission to use the automobile can delegate this authority to the second permittee so as to bring the use of the automobile by this person within the protection of the policy if permission has been expressly given by the named insured to make such delegation.

"2. The original permittee who has been given permission to use the automobile but has been expressly forbidden to delegate this authority cannot do so, and the use of the car by the second permittee in violation of the named insured's express order is not within the protection of the policy.

"3. The original permittee who has been given permission to use the car cannot, according to the great weight of authority, delegate this authority to the second permittee so as to bring the use of the car by that person within the protection of the policy where the initial permission is silent as to the question of delegation of authority.

"4. The initial permission given by the named assured to the original permittee includes, according to the better view, the use of the automobile by the second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee."

The question has never been decided by the Supreme Court of Arkansas nor by any of its inferior courts so far as the Court's research and that of counsel for the parties has revealed. However, the Court is convinced that the Arkansas law would be and is the same as the general rules above quoted.

■ Applying the general rules to the facts in the instant case, the Court concludes that (a) rule 1 is inapplicable since the named insured, Mrs. Johnson, did not give the original permittee, her son, permission to delegate his authority to the second permittee, Eicher; (b) rule 2 is applicable since Mrs. Johnson had expressly forbidden her son to permit anyone else to drive the automobile; (c) even if Mrs. Johnson had said nothing about whether her son could permit anyone else to drive the automobile, then rule 3 would apply.

It seems that defendants' primary contention is that the instant case calls for

**318**

the application of rule 4, which is actually an exception to rule 3. That is, defendants contend that the use of the automobile by the defendant Eicher served some purpose, benefit, or advantage of the first permittee, Bobby Johnson. But the facts, as found by the Court, disclose that the first permittee had no personal interest whatsoever in the desires of the defendant Eicher to locate a "date."

Therefore, the Court is convinced that the defendant Eicher, while using the insured automobile, was not an insured within the provisions of the policy, and thus the plaintiff cannot be required to defend any action for damages that may be brought by any of the defendants against the defendant Eicher to recover damages arising from the operation by him of the insured automobile, and the plaintiff would not be liable to any of the defendants on any judgment that might be recovered against the defendant Eicher, or against the defendants Clark and Tucker, by reason of the use of the insured automobile.

See, Johnson v. State Farm Mutual Automobile Ins. Co., 8 Cir., 194 F.2d 785, and Aetna Cas. & Sur. Co. v. De Maison, 3 Cir., 213 F.2d 826; 5 Am.Jur., Automobiles, Sec. 535.1.

■ Learned counsel for defendants have also called the Court's attention to Section 75–1466(b) (2), Cumulative Supplement, Ark.Stats.1947, Anno. The statute does not aid the defendants. It merely provides that an owner's policy of liability insurance "shall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured * * *." The policy in the instant case complies fully with the statute, but under the facts Eicher had neither express nor implied permission of Mrs. Johnson to drive the automobile.

### Conclusions of Law

#### 1.

The Court has jurisdiction of the subject matter and the parties to this cause.

#### 2.

The plaintiff under the terms of the contract of insurance issued to the insured, Mrs. L. E. Johnson, is not required to defend any suit which may be brought against the defendants Eicher, Clark, or Tucker, or either of them by either of the defendants, Alf Sisco and Wayne Kinion, nor is the plaintiff liable to either of the defendants, Alf Sisco and Wayne Kinion, for any damages that they may have sustained by reason of any collision of the insured automobile with their vehicles while said insured automobile was being driven and operated by the defendants, Glen David Eicher, Troy Clark, Ronald Tucker, or either of them on February 7, 1955.

#### 3.

That James L. Langston as guardian ad litem for the defendants, Glen David Eicher, Troy Clark, and Ronald Tucker, is entitled to recover a fee of $50 for his services as guardian ad litem.

#### 4.

That the plaintiff shall not be liable for the costs incurred by the defendants but plaintiff shall be required to pay the costs incurred by himself, including the fee to the guardian ad litem.

#### 5.

A judgment in accordance with the above will be entered.