The facts are that club members "kept" identifiable liquor *at* the club and "served" themselves. The higher than usual price of set-ups sold by the club does not change the facts recited nor render the legitimate sale of set-ups a subterfuge.

Section 25020(b) does not apply to these facts. Its wording makes it clear that it was designed to prohibit a tavern keeper from keeping on hand a supply of liquor which without a dispenser's license he would serve as an apparent gift to buyers of set-ups or food. The factual distinction between that and a bottle club is important and calls in my view for a reversal of the judgment below.

Bottle clubs operating after licensed bars are by law closed may be unfair to licensees and may also be a community nuisance. If so, let the Legislature legislate—not the Court. See Revised Laws of Hawaii 1955, Chapter 159, Section 159 4(a) and (b).

**M.F.A. MUTUAL INSURANCE COMPANY, a Corporation, Plaintiff,**

v.

**Howard R. MULLIN, Administrator of the Estate of William Ross Mullin, Deceased, Howard R. Mullin, Individually, and Grant LeRoy Brindle, Defendants.**

**Civ. A. No. 350.**

United States District Court
W. D. Arkansas,
Fayetteville Division.

Nov. 20, 1957.

Crouch & Jones, Springdale, Ark., for plaintiff.

Perkins & Ball, James R. Hale, Fayetteville, Ark., for defendants.

JOHN E. MILLER, District Judge.

### Statement

This declaratory judgment action was tried to the Court without a jury on August 28, 1957. At the conclusion of the trial the case was taken under advisement by the Court pending the preparation of a transcript of the evidence by the Court Reporter and the submission of briefs by the parties. The briefs have been received, and the Court, having considered the pleadings, evidence, and briefs of the parties, now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### Findings of Fact

**1.**

The plaintiff is a Missouri corporation authorized to do, and doing, business in the State of Arkansas. The defendant, Howard R. Mullin, is the duly appointed and acting Administrator of the Estate of William Ross Mullin, deceased, and is a citizen and resident of Washington County, Arkansas. The defendant, Grant LeRoy Brindle, a minor, is also a citizen and resident of Washington County, Arkansas. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

**2.**

In June of 1956 the deceased, William Ross Mullin, purchased a 1949 Plymouth 2-door automobile. At that time he was a minor 17 years of age, and the automobile was purchased in the name of his father, Howard R. Mullin. Title to the automobile was issued in the name of Howard R. Mullin, but the automobile was actually paid for and owned by William Ross Mullin. The automobile was never driven by Howard R. Mullin.

On June 9, 1956, plaintiff issued its automobile liability insurance policy, No. 1–540354, to Howard R. Mullin, covering the 1949 Plymouth. It was stated in the policy that the business or occupation of the named insured was "farmer". The policy was effective from July 9, 1956, to July 9, 1957, and the coverage for bodily injury liability was $5,000 each person or $10,000 each accident, and the property damage liability was $10,000 each accident. In paragraph 7 of the declarations it is stated "The named insured is the sole owner of the automobile * * *".

Under "Insuring Agreements" the policy, among other things, provides:

"1. Coverage A—Bodily Injury Liability—MFA Mutual will pay for the insured all damages which the

insured shall become legally obligated to pay because of bodily injury sustained by any person, caused by accident and arising out of the ownership, maintenance, or use, including the loading and unloading, of the owned automobile, a substitute automobile or a non-owned automoblie.

"2. Coverage B—Property Damage Liability—MFA Mutual will pay for the insured all damages which the insured shall become legally obligated to pay because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance, or use, including the loading and unloading of the owned automobile, a substitute automobile or a non-owned automobile.

"3. Defense and Settlement of Claims and Suits—With respect to such insurance as is afforded under Coverages A and B, MFA Mutual will defend any claim or suit for such damages against the insured, even if groundless, false, or fraudulent, but MFA Mutual may settle any claim, or suit as it deems expedient.

\*     \*     \*     \*     \*     \*

"6. Definition of Insured—With respect to the insurance afforded under Coverages A and B, the unqualified word 'insured' includes the named insured, and if an individual, his spouse, and:

a. With respect to the owned automobile or a substitute automobile, any person or organization using it or legally responsible for its use, provided the actual use of the automobile is by the named insured or spouse, or with permission of either; \*     \*     \*

\*     \*     \*     \*     \*     \*

"9. Financial Responsibility Law—Coverages A and B shall comply with the provisions of any applicable motor vehicle financial responsibility law to the extent of the coverage and limits of liability required by such law, but not in excess of the policy limits of liability, when this policy is certified as proof of financial responsibility for the future under the provisions of any such law. \*     \*     \* "

Under "Conditions" the policy provides:

"1. Effect of Policy Acceptance: By acceptance of this policy, the named insured agrees that the statements in the Declarations are his agreements and representations, and that this policy embodies all agreements, relating to this insurance, existing between himself and MFA Mutual or any of its agents.

"2. Insured's Duty When Loss Occurs—Notices to MFA Mutual— In the event of accident, occurrence or loss, written notice, containing all particulars shall be given by or for the insured to MFA Mutual as soon as practicable, \*     \*     \*.

"If claim is made or suit is brought against the insured, he shall immediately forward to MFA Mutual every demand, notice or summons received by him or his representative. \*     \*     \*

\*     \*     \*     \*     \*     \*

"4. Assistance and Cooperation of the Insured: With respect to Coverages A, B, E, F, G and H, the the insured shall cooperate with MFA Mutual, disclosing all pertinent facts known or available to him, and upon MFA Mutual's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. \*     \*

\*     \*     \*     \*     \*     \*

"6. Action Against MFA Mutual. No action shall lie against MFA Mutual, under any Coverage, until after full compliance with all the terms of this policy, \*     \*     \*.

"7. Subrogation: With respect to Coverages A, B, E, F, G and H,

upon payment of the loss, MFA Mutual shall succeed to all the insured's rights of recovery therefor, and the insured shall do whatever is necessary to secure such rights and do nothing after loss to prejudice them."

William Ross Mullin used the car until November 1956, when he went into the Army. At that time he left the car at the home of his father, Howard R. Mullin, near Lincoln, Arkansas. William Ross Mullin was stationed in Virginia, and apparently he received a Christmas leave because he returned to his father's home on December 24, 1956. During the time he was gone the car was parked under a tree at his father's home, and was not used by anyone.

It appears that William Ross Mullin was attempting to sell the automobile to Grant LeRoy Brindle, and that William Ross Mullin had authority of his father, Howard R. Mullin, to do so.

On the afternoon of December 28, 1956, William Ross Mullin left his father's home in the automobile, taking with him his sister. It is not clear from the evidence whether Grant LeRoy Brindle was at the Mullin home and left with William Ross Mullin and his sister, or whether he joined them later. In any event, neither Howard R. Mullin nor his wife gave Grant LeRoy Brindle express permission to drive the automobile.

### 4.

All the evidence with regard to how William Ross Mullin met his death is hearsay evidence. It does appear from the record, however, that at some later time in the evening of December 28 William Ross Mullin's sister was returned to her home, and that on the early morning of December 29, 1956, the automobile in question was involved in an accident on Highway 51 in Washington County, Arkansas, near the town of Cincinnati, Arkansas. It also appears from the record that the automobile was being driven by Grant LeRoy Brindle, and that an automobile driven by A. M. Prescott was also involved in the mishap. William Ross Mullin died as a result of the injuries he sustained in the accident.

Howard R. Mullin learned of the death of his son on the morning of December 29, and on that day or the next day contacted E. J. Ball, an attorney associated in the practice of law with Rex W. Perkins in Fayetteville, Arkansas. Ball began an investigation of the accident, and among other things took a statement from Grant LeRoy Brindle on the evening of December 30, 1956.

On December 31, 1956, Ball wrote the plaintiff's claims department as follows:

"Please be advised that the 1949 Plymouth Automobile covered by the captioned Insurance Policy was involved in an automobile collision on the night of December 28, 1956 near Cincinnati, Arkansas. A. M. Prescott was the driver of the other automobile and he has been charged with manslaughter.

"This office represents Mr. Howard R. Mullin and the estate of the decedent."

No other notice of the accident was given to plaintiff by Howard R. Mullin or Grant LeRoy Brindle.

On January 15, 1957, Robert E. Pettit, plaintiff's Claims Manager, wrote Ball acknowledging receipt of his letter of December 31, 1956, and stating "Our representative, Marvin Christopher, at Springdale, Arkansas, will contact you in the near future in regard to this matter".

Howard R. Mullin, through his attorneys, Perkins and Ball, asserted a claim against Prescott, the driver of the other automobile involved in the accident, and against Prescott's insurance carrier, Southern Farm Bureau Casualty Insurance Company. Negotiations were conducted relating to this claim, and on January 30, 1957, Prescott's insurance carrier, through its attorney, Charles R. Garner, offered to settle the claim of Mullin against Prescott for $3,000, provided Howard R. Mullin's attorneys would obtain a release from Grant LeRoy Brindle in favor of Prescott for the sum

of $50. Prescott's insurance carrier wanted to dispose of the whole matter at one time, and would not settle with Mullin unless it could also get a release from Brindle. Howard R. Mullin, acting through his attorneys, agreed to accept this offer of settlement.

On February 20, 1957, the Probate Court of Washington County, Arkansas, entered an order authorizing settlement of the claim of Howard R. Mullin, Administrator, against A. M. Prescott. Among other things the order authorizing the settlement states: "That A. M. Prescott caused the wrongful death of the said William Ross Mullin".

On February 21, 1957, Howard R. Mullin, Administrator, executed a release in favor of Prescott for the consideration of $3,000. The release was drawn in accordance with Act 315 of the Acts of Arkansas for 1941 in order to preserve the right of Howard R. Mullin to assert a claim against Grant LeRoy Brindle.

At 3:02 p. m. on February 21, 1957, Howard R. Mullin, Administrator of the Estate of William Ross Mullin, deceased, filed an action against Grant LeRoy Brindle, a minor, in the Circuit Court of Washington County, Arkansas.

It is alleged in the complaint, inter alia:

"That on December 29th, 1956, the deceased was a guest in a vehicle driven by Grant LeRoy Brindle, a minor, and that approximately one mile North of Cincinnati, Arkansas, on Highway 51, in Washington County, Arkansas, the defendant so carelessly, negligently and unlawfully at the time operated the car he was driving as to cause the injuries, damages and death to the deceased, and that said deceased was injured without fault on his part."

Howard R. Mullin prayed for judgment in the sum of $15,000 against the said defendant, Grant LeRoy Brindle. On the same day, February 21, 1957, summons was served on Grant LeRoy Brindle in the law offices of Perkins and Ball, attorneys for Howard R. Mullin. On March 22, 1957, Grant LeRoy Brindle and his parents issued a release to A. M. Prescott for a consideration of $50. The release refers to the accident which occurred on December 29, 1956, and among other things provides:

"Therefore, for the sole consideration of Fifty and no/100 Dollars ($50.00) in hand paid to First Parties (Grant LeRoy Brindle and his parents) by the Second Party (A. M. Prescott), receipt of which is acknowledged, First Parties do hereby release, acquit and forever discharge the said Second Party, his, its or their agents and employees and all other persons, firms or corporations who are or might be liable for such injuries from any and all actions, causes of actions, claims, and demands, damages, costs, loss of services, expenses and compensation on account of or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result to said minor from said accident including any other claims that First Parties or any of them may have which arose at the time or prior to such accident and to this end they do bind themselves, their heirs, executors, administrators, successors and assigns forever."

A draft dated April 4, 1957, in the sum of $50 was issued by Prescott's insurance carrier, Southern Farm Bureau Casualty Insurance Company, to Grant LeRoy Brindle and his parents. The draft referred to the accident, and on the face of the draft there appeared the following: "In full payment for any and all claims on the loss referred to above". This draft was cashed by Grant LeRoy Brindle, and he received the sum of $50.

5.

At the time the suit was filed by Mullin against Brindle in the Washington County Circuit Court on February 21, 1957, no notice was given by Howard R. Mullin or by Grant LeRoy Brindle to

plaintiff of the filing of the suit, and the summons served on Grant LeRoy Brindle was not forwarded to the plaintiff. Plaintiff did not learn of the suit until April 10, 1957, and at that time the notice was received by accident. One of plaintiff's adjusters happened to be checking some court records relating to the claim of Howard R. Mullin, Administrator, against Prescott, and learned of the suit of Howard R. Mullin, Administrator, against Grant LeRoy Brindle. Upon learning of this suit the adjuster notified his home office, and the home office in turn contacted plaintiff's attorney, Courtney Crouch.

In the meantime, no guardian ad litem had been appointed for Grant LeRoy Brindle in the case pending against him in the Washington County Circuit Court, and none had been appointed at the time of the trial August 28, 1957, of the instant case.

Some discussion of the matter was had between plaintiff's attorney, Crouch, and Mullin's attorney, Perkins, and on April 29, 1957, plaintiff filed the instant suit for a declaratory judgment asking the Court to construe the provisions of the policy issued by plaintiff to Howard R. Mullin and to determine the respective rights and liabilities of the parties.

### 6.

At the time of the accident Grant LeRoy Brindle was 17 years of age. He had attended school and could read and write, but the evidence did not disclose the extent of his education.

As heretofore stated, the day after the accident, December 30, 1956, he gave a statement to Howard R. Mullin's attorney concerning the accident. On January 1, 1957, he gave a statement to an adjuster representing the insurance carrier of Prescott. On January 2, he gave a statement to the Deputy Prosecuting Attorney of Washington County, Arkansas.

Later, at the request of Mullin's attorneys, and in accordance with the requirement of Prescott's insurance carrier,

Brindle executed a release to Prescott in order to facilitate the settlement of the claim of Howard R. Mullin against Prescott.

Grant LeRoy Brindle gave plaintiff no notice of the accident or of the suit filed against him by Howard R. Mullin. Brindle did not confer with plaintiff or its representative at any time, but it appears that they made no extensive effort to contact him.

Grant LeRoy Brindle left the State of Arkansas on June 2, 1957, and was not available for service of subpoena at the time of the trial of the instant action.

On August 7, 1957, plaintiff filed and served upon Grant LeRoy Brindle, through his Guardian ad Litem, James R. Hale, eight requests for admissions of fact under Rule 36, F.R.C.P. Hale attempted to contact Grant LeRoy Brindle in an effort to properly answer the requests for admissions, but was unable to do so. There was one letter, and possibly more, written by Hale to Grant LeRoy Brindle, and said letter or letters were not answered by Brindle and were not returned to Hale. On August 27, 1957, Hale answered the requests for admissions with what information he could obtain from Grant LeRoy Brindle's father. The answers to requests Nos. 1 through 7, inclusive, merely state he (Hale) does not know whether the matters contained in the requests are true. In answer to request No. 9 Hale stated:

"He admits that the defendant Grant LeRoy Brindle agreed to settle and did settle any claim or cause of action that he had or might have against A. M. Prescott, but he does not know whether said settlement was made to enable Howard R. Mullin to effect settlement with the insurance carrier of the said A. M. Prescott for the death of William Ross Mullin, and he does not know whether said settlement was done without the consent and knowledge of the plaintiff as set forth in request number eight."

## Discussion

The Court is met at the threshold with defendants' contention that the Court, in the exercise of its discretion, should refuse to grant a declaratory judgment.

█ The rule is firmly established that the granting of a declaratory judgment rests within the sound judicial discretion of the Court. Allstate Ins. Co. v. Thompson, D.C.W.D.Ark., 121 F.Supp. 696, 700, and cases therein cited.

In the very recent case of State Farm Mutual Automobile Ins. Co. v. Bonwell, 8 Cir., 248 F.2d 862, 866, the court said:

"Appleman, Insurance Law and Practice, Vol. 20, defines 'discretion' as follows (p. 80):

" 'The term "discretion", as used in declaratory judgment actions, refers to the power exercised by the courts to determine questions to which no strict rule of law is applicable, but which, from their nature and the circumstances, are controlled by the Court's personal judgment.'

"Since the facts of each case differ and each case must be decided upon its own facts, little purpose would be accomplished in discussing in detail the many cases considering the abuse of discretion issue."

If in the instant case the issues were the same as the issues in the pending state court action, defendants' contentions might be well founded. Particularly would this be true if the action in the state court were one by the injured party against the named insured, since the insurance company must defend any suit against its insured even though the suit is groundless, false, or fraudulent.

The issues in the instant case, however, are entirely different from the issues in the state court action. The latter action is merely one by Howard R. Mullin, as Administrator of the Estate of William Ross Mullin, deceased, against Grant LeRoy Brindle to recover damages for the alleged willful negligence of Brindle in proximately causing the death of William Ross Mullin. In the event Mullin should obtain a judgment against Brindle and could not collect from him, Mullin would be required to file a separate suit against the plaintiff herein, MFA Mutual Insurance Company, to determine whether Brindle was an insured within the meaning of the policy issued by plaintiff to Howard R. Mullin.

In the instant case, the general issues are (1) whether Grant LeRoy Brindle is an insured within the meaning of the policy in question, and (2) if Brindle is an insured, whether plaintiff is required to defend the action against him in the state court, and within the limits of its policy to pay any judgment obtained by Mullin against Brindle.

The Court is inclined to agree with plaintiff's contention that this is a "classic declaratory judgment situation". As stated by this Court in Allstate Insurance Co. v. Thompson, supra, at page 701 of 121 F.Supp.:

"The duty of an insurer to defend actions brought against the insured is an important, and often decisive, factor determining the propriety of the entertaining of a declaratory judgment action. (Citing cases.)"

A determination by the Court of the issues in this case will advise the plaintiff whether it will be required to defend the action pending in the state court, and whether it will be required to pay any judgment obtained therein. If the Court were to refuse to grant the declaratory judgment, plaintiff would either have to defend said action in the state court or refuse to do so at its peril.

█ In view of the difference in the issues in the state court case and in the instant action, the Court feels that it would be an abuse of discretion to refuse to grant a declaratory judgment herein.

This conclusion requires the consideration and determination by the Court of the other issues and contentions of the parties. The first question is whether Grant LeRoy Brindle is an insured within the meaning of the policy. The answer to this question depends upon whether Brindle was using the automobile with

the permission of the named insured, Howard R. Mullin, or with the permission of the named insured's wife, Mrs. Howard R. Mullin.

As stated in Dodson v. Sisco, D.C.W.D. Ark., 134 F.Supp. 313, 317, it appears that the Supreme Court of Arkansas has not had an occasion to decide the question involved herein, but this Court is of the opinion that the general rules outlined by the author of the Annotation in 160 A.L.R. 1195, at page 1206, are in accord with the Arkansas law.

In the Dodson case the court set out the four general rules governing the situation where an automobile is entrusted by the named insured to one person who in turn permits a third person to drive the automobile. The first rule relates to a situation where the named insured gives the first permittee express permission to allow the second permittee to drive the automobile, and the second rule relates to a situation where the named insured expressly forbids the first permittee to permit the operation of the automobile by the second permittee.

The named insured, Howard R. Mullin, and his wife in the instant case, did not give the first permittee, William Ross Mullin, permission to allow the second permittee, Grant LeRoy Brindle, to drive the automobile, nor did Mr. and Mrs. Mullin forbid William Ross Mullin to permit Brindle to operate the automobile. Thus, the first two rules have no application herein.

The third rule is stated as follows:

"The original permittee who has been given permission to use the car cannot, according to the great weight of authority, delegate this authority to the second permittee so as to bring the use of the car by that person within the protection of the policy where the initial permission is silent as to the question of delegation of authority."

This is the rule relied upon by plaintiff in this action.

The fourth rule is stated as follows:

"The initial permission given by the named assured to the original permittee includes, according to the better view, the use of the automobile by the second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee."

This rule is relied upon by the defendant, Howard R. Mullin.

In the Annotation above mentioned, at page 1213 of 160 A.L.R., it is further stated:

"It has been held in the great majority of cases that the initial permission given by the named assured to the original permittee includes, by implication, authority to delegate the operation of the automobile to an agent or servant where the original permittee is riding with the agent or servant in the car."

Plaintiff takes issue with this statement, and in support of its position cites Aetna Casualty & Surety Co. v. De Maison, 3 Cir., 213 F.2d 826. In the Aetna case, the court analyzed the cases cited in the annotation and concluded that the cases do not fully support the broad statement of the rule.

It may be true that all of the cases cited in the annotation do not support the rule stated, but there are at least three reasons that impel the Court in the instant case to hold that Grant LeRoy Brindle was driving the automobile with the permission of the named insured, Howard R. Mullin.

■ To begin with, it must be remembered that the necessary permission may be implied as well as express. Stoll v. Hawkeye Cas. Co., 8 Cir., 193 F.2d 255; Hawkeye Cas. Co. v. Rose, 8 Cir., 181 F. 2d 157; Southern Farm Bureau Cas. Co. v. Allstate Ins. Co., D.C.W.D.Ark., 150 F.Supp. 216.

■ In the case at bar there was evidence that William Ross Mullin, with the knowledge and permission of Howard R.

Mullin, was attempting to sell the automobile to Grant LeRoy Brindle. This in itself is sufficient to establish implied permission on the part of Brindle to drive the automobile. Compare, United Services Automobile Ass'n v. Russom, 5 Cir., 241 F.2d 296; General Cas. Co. of America v. Woodby, 6 Cir., 238 F.2d 452.

■ A second reason for holding that Brindle had implied permission to drive the automobile is that William Ross Mullin was in fact the real owner of the automobile, and had full authority to use it in any manner, including the authority to permit Brindle to drive it. Compare, United Services Automobile Ass'n v. Preferred Acc. Ins. Co. of New York, 10 Cir., 190 F.2d 404.

■ A third reason for holding that Brindle had permission to drive the automobile is that Brindle and William Ross Mullin were engaged in a joint venture, and the driving of the automobile by Brindle served "some purpose, benefit, or advantage" of William Ross Mullin. Compare, Glens Falls Indemnity Co. v. Zurn, 7 Cir., 87 F.2d 988.

■ Therefore, it seems clear that Grant LeRoy Brindle was driving the automobile with the implied permission of the named insured, Howard R. Mullin, and therefore was and is an insured within the meaning of the policy.

Before leaving this question, the Court might note that it appears from the record that the plaintiff's insurance adjusters were of the opinion that merely because Howard R. Mullin gave no express permission to Grant LeRoy Brindle to drive the automobile, that Brindle was not an insured under the policy. In United Services Automobile Ass'n v. Russom, supra, the court at page 300 of 241 F.2d made this appropriate comment:

"A fact some underwriters are reluctant to appreciate is that, by the Omnibus Clause, the insurer has committed to the named assured a wide capacity to determine to whom and under what circumstances coverage will be extended."

The next question is whether the omnibus insured, Grant LeRoy Brindle, has violated any material provision of the policy in question. Before reaching this question, however, the Court must first dispose of the defendant Howard R. Mullin's contention that by reason of the Arkansas Financial Responsibility Law any breach of the policy by Brindle could not affect the rights of the injured party, Howard R. Mullin, as Administrator of his son's estate.

■ The short answer to this contention is that the requirements of the Financial Responsibility Law, Ark.Stats. § 75–1401 et seq. only apply to policies which are issued as proof of financial responsibility under the Act. This question was settled conclusively on October 28, 1957, in Aetna Casualty & Surety Co. v. Simpson, Ark., 306 S.W.2d 117. This Court had reached a similar conclusion in Roberts v. Commercial Standard Ins. Co., D.C.W.D.Ark., 138 F.Supp. 363, 375, with regard to the 1951 Financial Responsibility Act. See also, Warren v. Commercial Standard Ins. Co., 219 Ark. 744, 244 S.W.2d 488.

The policy involved in the instant case was not issued under the Arkansas Financial Responsibility Law, and that statute has no effect whatsoever upon the disposition of this case.

Thus, the Court reaches the ultimate question of whether Grant LeRoy Brindle has breached any material provision of the policy. One of the contentions made by plaintiff is that Grant LeRoy Brindle has breached Condition No. 7 of the policy, which provides:

"7. Subrogation: With respect to Coverages A, B, E, F, G and H, upon payment of the loss, MFA Mutual shall succeed to all the insured's rights of recovery therefor, and the insured shall do whatever is necessary to secure such rights and do nothing after loss to prejudice them."

More specifically, plaintiff contends that Grant LeRoy Brindle by giving a release to Prescott has destroyed Brindle's right to seek contribution against Prescott in the event a judgment is obtained by Mullin against Brindle in the state court suit; that Brindle's action in executing the release has destroyed plaintiff's subrogation right to seek contribution from Prescott.

■ It is true that if plaintiff should be required to pay a judgment rendered against Brindle in the state court action, it would be subrogated to any claim Brindle might have against Prescott, including a claim for contribution under the Uniform Contribution Among Tortfeasors Act (Sec. 34–1001 et seq., Ark. Stats. 1947 Ann.). See generally, American Employers' Ins. Co. v. Maryland Cas. Co., 4 Cir., 218 F.2d 335; Silver Fleet Motor Exp. v. Zody, D.C.Ky., 43 F.Supp. 459; Commercial Cas. Ins. Co. v. Leonard, 210 Ark. 575, 196 S.W.2d 919 (denying contribution to an insurance carrier in an action accruing prior to enactment of the Uniform Contribution Among Tortfeasors Act, but indicating that contribution would be proper in an action accruing after the effective date of the Act); Annotations, 171 A.L.R. 271; 75 A.L.R. 1486; 141 A.L.R. 1207, 1210; 122 A.L.R. 520, 524; 13 Am.Jur., Contribution, Sec. 58.

It is further true that if Grant LeRoy Brindle has destroyed plaintiff's right to seek contribution, such action on his part would be a breach of the policy. American Automobile Ins. Co. v. Mack, D.C.Ky., 34 F.Supp. 224.

But in the instant case the release given by Brindle to Prescott did not destroy Brindle's right to seek contribution against Prescott, since Brindle at that time had no such right. The release given by Mullin to Prescott on February 21, 1957, complies in all particulars with Sec. 34–1005, Ark.Stats., and among other things provides:

"Therefore, it is hereby specifically agreed that damages suffered by the undersigned and recoverable against any other person as a result of the occurrence described herein shall be reduced to the extent of the pro rata share of the responsibility for such damages of the parties hereby released. It is the intention of the parties that this provision shall conform with the requirements of Section 5 of Act No. 315 of the Acts of Arkansas for 1941 and that the parties hereby released shall be relieved from any liability to make contribution to any other person by reason of the provisions of Act 315 of the Acts of Arkansas for 1941, and amendments thereto, being the Uniform Contribution Among Tortfeasors Act."

The statute referred to provides:

"A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors."

■ The effect of this release was to extinguish any claim of Mullin against Prescott, and to relieve Prescott of the obligation to make contribution to Brindle or any other joint tortfeasor. Thus, at the time Brindle executed the release to Prescott on March 22, 1957, Brindle had no claim for contribution against Prescott.

■ However, Brindle still has exactly the same substantive rights he possessed before the execution of the two releases. This is true since the release executed by Mullin to Prescott specifically provided that any damages Mullin might recover against any other person would be reduced to the extent of the pro rata share of responsibility on the part of Prescott. In other words, Brindle in the state court action may offer the release executed by Mullin to

Prescott as a defense, either wholly or pro tanto, to the claim of Mullin. See, Raughley v. Delaware Coach Co., 1952, 8 Terry 343, 47 Del. 343, 91 A.2d 245. See also, 11 Ark.Law Review, 54, 66. If the jury should find that Prescott was solely at fault, that would be a complete defense in the state court action. Likewise, if the jury should find that Prescott was guilty of negligence which was 90 percent of the cause of William Ross Mullin's death, then the maximum recovery Howard R. Mullin could obtain from Brindle (in the event he was entitled to recover anything) would be 10 percent of his damages.

It is clear then that Brindle, and plaintiff by reason of its subrogation rights, still has the same substantive rights he had prior to the execution of the release, the only difference being in the manner in which the right may be asserted.

Plaintiff also contends that Grant LeRoy Brindle breached Condition No. 2 of the policy, which provides:

"2. Insured's Duty When Loss Occurs—Notices to MFA Mutual— In the event of accident, occurrence or loss, written notice containing all particulars shall be given by or for the insured to MFA Mutual as soon as practicable * * *."

\* \* \* \* \*

"If claim is made or suit is brought against the insured, he shall immediately forward to MFA Mutual every demand, notice or summons received by him or his representative."

In determining whether Brindle breached this condition of the policy, it seems advisable to refer briefly to some of the material facts.

The defendant, Howard R. Mullin, was the named insured. The defendant Brindle became an insured because of the implied permission given him by the named insured to drive the insured automobile.

The son of the defendant Howard R. Mullin was killed on the morning of December 29, 1956, as the result of an accident involving a car driven by A. M. Prescott and the insured car driven by Brindle. On December 31, two days after the accident, one of the attorneys for Howard R. Mullin wrote the Claims Department of the plaintiff and advised that the 1949 Plymouth automobile covered by the policy in suit was involved in a collision; that Prescott was the driver of the other automobile, and that "this office represents Mr. Howard R. Mullin and the estate of the decedent". No other notice of the accident was given to plaintiff by either the named insured or by the omnibus insured. The Claims Manager of plaintiff acknowledged receipt of the letter from the attorney of Mullin, and stated that the representative of plaintiff would contact him in the near future in regard to the matter.

On January 30, 1957, Prescott's insurance carrier, through its attorney, agreed to make a settlement with Mullin. Likewise, settlement was made of the claim of Brindle against Prescott by the insurance carrier of Prescott. The release executed by Mullin was dated February 21, 1957, and in the afternoon of the same day Mullin, as Administrator of the estate of the decedent, filed his action against the defendant Brindle in the Circuit Court of Washington County, Arkansas, seeking to recover damages from Brindle for alleged willful negligence which contributed to or caused the death of the deceased, William Ross Mullin. No written notice containing all particulars was given by anyone to the plaintiff by or for either the named insured or the omnibus insured. Likewise, neither the named insured nor the omnibus insured forwarded to plaintiff "every demand, notice or summons received by him or his representative".

Section 6 of the "Conditions", which is set forth in full in Findings of Fact No. 2, provides that no action shall lie against plaintiff under any coverage until after full compliance with all of the terms of the policy. It has heretofore been shown that plaintiff learned of the pendency of the suit in the state court against the omnibus insured on April 10,

1957, almost two months after the suit had been filed by Mullin. This information was obtained by one of the representatives of plaintiff when he was checking the court records relative to the claim of Mullin, Administrator, against Prescott.

At the time suit was filed in the state court, Brindle was a minor, 17 years of age, and no guardian to defend him has ever been appointed, and no valid judgment could be entered against Brindle until the appointment of a guardian ad litem. But service of summons on Brindle was completed on the date the state court suit was filed, February 21, 1957.

The complaint in the case at bar alleges that, although no demand has been made by the defendant Brindle that the plaintiff defend the action pending against him in the state court, demand has been made by the defendant herein, Mullin, as Administrator of the Estate of William Ross Mullin, that the plaintiff settle the said suit now pending in the Circuit Court of Washington County, Arkansas, against Brindle. The answer admits that Mullin has demanded that the plaintiff settle the cause of action with him.

The question of whether Grant LeRoy Brindle's and Howard R. Mullin's failure to give complete written notice of the accident, and Brindle's failure to forward to plaintiff the summons received by him in the state court action, relieved the plaintiff from its obligations under the insurance policy must be determined by the Arkansas law. There have been only a few Arkansas cases on this subject, and the Court feels that it might be helpful to review briefly these decisions.

The case of Hope Spoke Co. v. Maryland Cas. Co., 102 Ark. 1, 143 S.W. 85, 38 L.R.A.,N.S., 62, was a case where one of the employees of the appellant had obtained a judgment against it for damages. The appellee, Maryland Cas. Co., had issued to appellant an employers' liability insurance policy. The insurance carrier refused to pay the judg-

ment obtained by Presley against appellant, and appellant paid the judgment and then filed a suit against appellee to recover the amount that it, the employer, had been required to pay to satisfy the judgment. Appellee defended solely on the ground that "immediate notice of the accident was not given".

The policy provided "immediate notice of any accident and of any suit resulting therefrom, with every summons or other process, must be forwarded to the home office of the company or to its authorized representative".

The court, in the course of its opinion, at page 9 of 102 Ark., at page 87 of 143 S.W. said:

"The following authorities fully sustain the view that failure to give notice within a specified time in accordance with the terms of the policy, does not operate as a forfeiture of the right to recover, unless the policy in express terms or by necessary implication makes the giving of notice within a time specified a condition precedent to recovery." (Citing cases.)

On page 11 of 102 Ark., on page 88 of 143 S.W. of the opinion the court said:

"In the absence of an express stipulation declaring this requirement to be of the essence of the contract and, therefore, a condition precedent to the right of recovery, we do not think that it is correct to say that such a requirement is of the essence of the contract unless it is shown to materially affect the rights of the parties in the given case. * * * We fail to see why it should be so in an insurance policy any more than in any other kind of a contract where strict compliance with every specification of the contract is generally held not to be of the essence of the contract unless made so by the terms of the contract or by necessary implication. Lenon v. Mutual Life Ins. Co., 80 Ark. 563, 98 S.W. 117, 8 L.R.A.,N.S., 193. The facts of this case illustrate the justness of the conclusion

we reach on the question. Appellee received notice of the accident in time to make a full investigation and to investigate to its satisfaction. It is not claimed that it suffered any loss or injury by reason of not having received the notice earlier. The defense is purely technical and without any substantial merit. To hold that the appellee should escape liability on account of the failure to receive notice strictly in accordance with the terms of the contract, would be to absolve it from its just obligation on a point which was not in the slightest degree material to its rights."

However, the opinion discloses that notice of the filing of the suit by Presley against appellant was promptly given, but notice of the accident was not given until 32 days after it had occurred.

In the case of Home Life & Acc. Co. v. Beckner, 168 Ark. 283, 270 S.W. 529, the court apparently relied upon its holding in Hope Spoke Co. v. Maryland Cas. Co., supra. At page 288 of 168 Ark., at page 531 of 270 S.W. it said:

"Whatever may be the rule in other jurisdictions this court is committed to the doctrine that failure to give notice under a clause in a policy similar to that under review 'does not operate as a forfeiture of the right to recover, unless the policy, in express terms, or by necessary implication, makes the giving of the notice within the time specified a condition precedent to recover.'"

The policy in the Beckner case provided:

"The assured, upon the occurrence of any accident, shall give immediate written notice thereof, with the fullest information obtainable at the time, to the head office of the company at Fordyce, Ark., or to the agent countersigning this policy. He shall give like notice with fullest particulars of any claim that may be made on account of such accident and shall at all times render to the company all co-operation and assistance in his power.

"If, thereafter, any suit is brought against this assured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the company every summons or other process as soon as the same shall have been served on him * * *."

The court, after commenting upon the provisions of the policy above set forth, said at page 288 of 168 Ark., at page 531 of 270 S.W.:

"We therefore cannot concur in the view of the learned counsel for the appellant that the clause of the policy for construction in the case at bar makes the failure of the assured to comply with the provisions of the policy in regard to the giving of immediate notice of the accident and of any suit instituted by the injured party against the assured conditions precedent, and grounds of forfeiture of the policy."

Continuing on the same page, the court said:

"We do, however, fully agree with the counsel for appellant in his contention that there must be at least a bona fide compliance on the part of the assured with these provisions of the contract before he is entitled to a recovery. The assured, in other words, cannot wholly ignore the requirements of the policy as to notice of the occurrence of the accident, and as to the claim of the assured on account thereof, and likewise the provision requiring notice of any suit brought by the injured party against the assured for damages on account of the accident. These provisions in an insurance policy are valid. They are intended for the protection of the insurer in order that he may investigate the circumstances of the injury and determine the course that he will pursue with reference to any claim that may be asserted against

the assured by reason of such injury either before or after suit. Even though not a condition precedent and not a ground for forfeiture of the policy, the insurer has the right to insist that the insured comply with the obligations of his contract."

In the case of Home Indemnity Co. v. Banfield Bros. Packing Co., Inc., 188 Ark. 683, 67 S.W.2d 203, the court in its discussion of the opinion in the case of Hope Spoke Co. v. Maryland Cas. Co., supra, beginning at the bottom of page 689 of 188 Ark., at page 206 of 67 S.W. 2d, said:

"This case also laid down the rule that, where the provision for notice was not a condition precedent, failure to give notice would not avoid the policy unless it was shown that the insurer suffered some loss or injury because notice was not given sooner. In the Beckner case there is language which might be interpreted to qualify that rule, but the real point on which the case turned was the long and inexcusable delay in giving notice. The accident involved in that case occurred on June 25, 1915, and the insured did not notify the insurer until January 24, 1917. The court held that this was an unreasonable and inexcusable delay, and, while not stating the reason for so holding, it is patent that it must have indulged the presumption that injury resulted thereby, because it is apparent that the insurer was prevented from making any reasonable investigation of the circumstances surrounding the accident, especially when it was further shown that a suit had been filed against the insured for injuries arising because of the accident approximately ten months before the date when the insurer was first notified of the happening of the accident and the filing of the suit.

"The correct rule as announced in the Hope Spoke Company case is that, unless a stipulation constitutes a condition precedent and all rights under the policy are forfeited for failure to comply with it, an omission to comply therewith is not a defense to a suit on the policy, unless some injury resulted from such omission."

In American Fidelity & Cas. Co., Inc., v. Northeast Arkansas Bus Lines, Inc., 201 Ark. 622, 146 S.W.2d 165, the appellant contended that although the policy was in effect, all premiums having been paid, appellees were not entitled to protection under it for the reason that they had failed to comply with one of the specific provisions of the insurance policy requiring notice of any claim for injury to be given appellant insurance company within five days from the happening thereof, and that this was a condition precedent to the recovery.

The only provision of the policy set forth in the opinion is as follows:

"Reporting Accidents, Claims, Suits. (A) Upon the occurrence of an accident or an alleged accident, covered under this policy, the assured shall give immediate written notice thereof with the most complete detailed information obtainable at the time to the company, at its home office in Richmond, Virginia, or to its nearest branch office or to its duly authorized agent; if a claim is made on account of such an accident or if any suit is brought against the assured to enforce such a claim the assured shall forward to the company immediately every written communication, or information as to any verbal communication, and every process, pleading and paper relating to any claim and/or proceeding. The words 'Immediate' or 'Immediately' as used herein shall be construed to mean not exceeding five days."

In reference to the contention of appellant, the court at page 623 of 201 Ark., at page 166 of 146 S.W.2d said:

"We agree with appellant that it devolved upon appellees to show compliance with the above provision,

since it is a condition precedent to recovery."

The case of Warren v. Commercial Standard Ins. Co., 219 Ark. 744, 244 S.W. 2d 488, is the last expression of the court on the question now under consideration. In that case the appellant had obtained a judgment against the operator of a taxicab, who held a policy of liability insurance issued by the appellee. Prior to the judgment obtained by appellant against the taxicab operator, no notice whatever was given to the insurance company as to the occurrence of the accident or of the pendency of the suit, and the plaintiff brought suit against the insurance carrier to collect on said judgment. The provisions of the policy as to notice of accident and notice of claim or suit are as follows:

"Notice of Accident—When an accident occurs, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

"Notice of claim or suit; Coverages A and B—If claim is made or suit brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

The trial court held that the insurance company was not liable on the policy because no notice of the accident or of the pendency of the suit was given to the company prior to the judgment.

The appellant contended that since he did not know what company had issued a policy to the operator of the taxicab and did not, in fact, know that he had a policy of liability insurance, that he could not notify the insurance company and that he should not be deprived of

collecting from the insurance company because the policyholder failed to notify the insurance company of the collision and the pendency of the suit.

The appellee, the insurance company, contended that the terms of the policy provided for notice to it so that it could take whatever action appeared advisable in the circumstances, and since it received no notice the policyholder himself could not recover on the policy, and a third party who had suffered damages had no greater rights than did the person to whom the policy was issued.

In disposing of the contentions of the parties, the court quoted that portion of the opinion in Home Life & Acc. Co. v. Beckner, heretofore set forth, beginning with the words "We do, however, fully agree with the counsel for appellant * * *". After said quotation, the court merely said, beginning at the bottom of page 746 of 219 Ark., at page 490 of 244 S.W.2d:

"With regard to the rights of the injured third party to recover against the insurer in circumstances of this kind, the weight of authority is as stated in 46 C.J.S. Insurance § 1191, p. 122, as follows: 'Ordinarily, unless otherwise provided by statute, the injured person cannot recover against insurer if insured breaches material terms of the policy by reason of which insurer would be released from liability to insured, such as where insured fails to give insurer the required notice of the accident or injury, notice of the claim against insured, notice of litigation against insured, or fails to co-operate with insurer in defense of liability.' "

None of the above-mentioned opinions of the Arkansas Supreme Court set out any policy provision independent of the requirements as to notice of accident and notice of claim or suit which would, by its terms, make such notices conditions precedent to the maintenance of a suit on the policy.

The Arkansas decisions seem to establish the following rules: (1) if the re-

quired notices are conditions precedent, they must be given by the insured (either the named insured or the omnibus insured) ; (2) even if the notices are not conditions precedent, the insurer has a right to insist upon substantial compliance by the insured with the notice provisions; (3) the notice provisions may be conditions precedent even though the specific words "conditions precedent" are not used in the policy (see, American Fidelity & Cas. Co., Inc., v. Northeast Arkansas Bus Lines, Inc., supra).

When the facts in the instant case are considered in the light of the Arkansas decisions, it is apparent that the named insured and the omnibus insured have breached Condition No. 2 of the policy.

The only notice given plaintiff of the accident was the letter of December 31, 1956, written by Mullin's attorney to plaintiff's Claims Department (the letter is set out in Findings of Fact No. 4). It is doubtful whether this letter would be sufficient notice under the policy, but, regardless of that, there was absolutely no notice given by anyone of the filing of the suit by Mullin against Brindle in the state court.

Section 6 of the "Conditions" provides:

"No action shall lie against MFA Mutual under any coverage until after full compliance with all the terms of this policy."

The Court is of the opinion that the contract of insurance in express terms makes the provision with reference to the giving of notice in the event of an accident and the requirement that the insured shall immediately forward to plaintiff every demand, notice or summons received by him or his representative, conditions precedent to the liability of the insurance carrier, the plaintiff, to either defend the state court suit or to pay any judgment that might be obtained by Mullin against Brindle.

See, Decker v. Kolleda, 57 Ohio App. 442, 14 N.E.2d 417; State Farm Mutual Automobile Ins. Co. v. Cassinelli, 67 Nev. 227, 216 P.2d 606, 18 A.L.R.2d 431, and annotation beginning on page 443 of 18 A.L.R.2d.

In the instant case, Condition No. 2 required the insured to "immediately" forward to plaintiff every demand, notice, or summons received by the insured. The term "immediately" means within a reasonable time considering the circumstances. See, Home Life & Acc. Co. v. Beckner, supra, at page 289 of 168 Ark., at page 531 of 270 S.W.

Here neither the omnibus insured, Brindle, nor the named insured, Mullin, gave plaintiff any notice of the suit filed by Mullin against Brindle in the state court. It was not until a month and a half after the suit was filed that plaintiff learned of the suit, and that knowledge was gained by accident rather than by notice on the part of Mullin or Brindle. Under these circumstances it is clear that there has been a complete failure of both the named insured and the omnibus insured to comply with Condition No. 2 of the policy.

Since the Court has concluded that the notice provisions were conditions precedent, and were breached by both the omnibus insured, Grant LeRoy Brindle, and the named insured, Howard R. Mullin, it is unnecessary for the Court to determine whether any prejudice resulted to plaintiff by reason of the failure of Brindle and Mullin to give the proper notices. It is also unnecessary for the Court to decide the remaining questions raised by the parties.

In passing, the Court might say, however, that there is a serious question as to whether the omnibus insured, Brindle, failed to cooperate with the plaintiff as required in Condition No. 4 of the policy; whether Brindle, by failing to answer the requests for admissions of fact filed by plaintiff has admitted the validity of plaintiff's defense; whether there has been collusion between the omnibus insured and the named insured; and whether the declaration of Howard R. Mullin in the policy that he was the sole owner of the automobile was, in fact,

false. But, as above stated, the Court need not pass upon these issues.

It follows from the above that plaintiff is entitled to a declaratory judgment, declaring that it has no duty to defend the action pending in the state court by Mullin against Brindle, and that it has no duty to pay any judgment which may be obtained by Mullin against Brindle in said action.

### Conclusions of Law

**1.**

The Court has jurisdiction of the parties and the subject matter herein.

**2.**

The defendant, Grant LeRoy Brindle, is an insured within the meaning of the policy in question.

**3.**

The defendants, Grant LeRoy Brindle and Howard R. Mullin, failed to give the notices required in Condition No. 2 of the policy, and therefore breached said condition.

The requirements of notice were conditions precedent, and Grant LeRoy Brindle's and Howard R. Mullin's failure to give proper notice has relieved plaintiff of its obligations under the policy to defend the action pending in the state court by Howard R. Mullin against Grant LeRoy Brindle and to pay any judgment rendered therein.

Therefore, a judgment should be entered declaring that the plaintiff, MFA Mutual Insurance Company, has no duty to defend the action now pending in the Washington County Circuit Court by Howard R. Mullin against Grant LeRoy Brindle and further declaring that plaintiff has no obligation to pay any judgment that may be obtained by Mullin against Brindle in said action.

**4.**

James R. Hale, as guardian ad litem for the defendant, Grant LeRoy Brindle, is entitled to recover a fee of $100 for his services as guardian ad litem.

**5.**

Each party shall pay his or its own costs, and the fee of the guardian ad litem shall be taxed as costs and paid by the plaintiff.

A judgment in accordance with the above should be entered.