Sarah Etta DAVIS, Administratrix of the Estate of Earl Sinclair Davis, Deceased, Appellee,

v.

ST. PAUL-MERCURY INDEMNITY COMPANY, Appellant.

No. 8309.

United States Court of Appeals Fourth Circuit.

Argued April 12, 1961.

Decided Aug. 28, 1961.

642

John H. Anderson, Jr., Raleigh, N. C. (Willis Smith, Jr., and Smith, Leach, Anderson & Dorsett, Raleigh, N. C., on brief), for appellant.

Joseph C. Moore, Jr., and Charles H. Young, Raleigh, N. C. (Ruark, Young, Moore & Henderson, Raleigh, N. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and HARRY E. WATKINS, District Judge.

SOBELOFF, Chief Judge.

This case presents the important question of the power of a state through its courts to exercise jurisdiction over a nonresident whose automobile was used in that state with her permission, though not by her personally. There was no personal service of process upon the nonresident, but substituted service in accordance with the state's Non-Resident Motorist Statute, N.C.Gen.Stat. § 1–105 (Supp.1959).

Mrs. Ida Weitz, whose home is in Victoria, Texas, purchased an automobile to be used by her minor son while stationed as a marine at Camp Lejeune, North Carolina. A liability insurance policy, limited to $5,000, was issued by St. Paul-Mercury Indemnity Company which contained the standard omnibus clause that extends coverage not only to the named insured, but to anyone driving with the permission of the named insured. Mrs. Weitz admonished her son to "be careful how he drove and who he let drive." On September 28, 1952, Earl Sinclair Davis, a resident of North Carolina, was killed in Wilmington, North Carolina, by this automobile while it was being driven with the son's permission by a fellow marine.

In a suit brought by the widow as administratrix of the decedent's estate, judgment by default was recovered against Mrs. Weitz in a North Carolina court after statutory substituted service. Mrs. Weitz had knowledge of the suit, as did her insurance company which elected not to defend. Judgment was entered on April 21, 1955, for $25,000, with interest from that date. Later, on April 26, 1960, a judgment in the same amount was recovered against Jerome S. Curcuro, the driver at the time of the fatal accident. The plaintiff, unable to collect from the judgment debtors, brought suit in the United States District Court against the insurance company on its policy. Jurisdiction over the subject matter was predicated upon diversity of citizenship. Recovery was allowed for $5,000, the limit of the policy, plus interest on the $25,000 face amount of the judg-ment, as provided in the policy, from the date of the judgment against Mrs. Weitz. The insurer seeks by this appeal to set aside the judgment entered against it.

We are not here concerned with the correctness of the North Carolina court's substantive finding of liability against Mrs. Weitz or Curcuro. This matter has been adjudicated by the North Carolina court. These judgments, not having been appealed, are final. However, they constitute a proper basis for the plaintiff's recovery against the insurance company and are immune from collateral attack only if the North Carolina court had jurisdiction over the defendants. It is a well-settled rule that a judgment, void for lack of jurisdiction over the person of the defendant, may be collaterally attacked in a second proceeding unless the jurisdictional question has already been adjudicated between the parties. Ehrenzweig, Conflict of Laws 205 (1959); Goodrich, Conflict of Laws 611–612, 634 (3rd ed., 1949); Restatement, Judgments §§ 9, 11, 14 (1942). In the present case, the question of jurisdiction is not res judicata because Mrs. Weitz did not make an appearance to contest jurisdiction. There is no question of North Carolina's jurisdiction as to Curcuro who drove the car because he appeared to defend after substituted service was made on him.

Whether the defendant, Mrs. Weitz, is within the reach of the North Carolina jurisdictional statute and whether she had sufficient contacts with North Carolina to enable the courts of that state to render a constitutionally valid in personam judgment against her are the principal questions to be decided. Two other questions arise out of the suit on the policy. One is whether Mrs. Weitz was the real owner of the automobile, for if she was not the owner, the policy may be voided for false representation and lack of insurable interest. The other is whether Curcuro may be deemed to have been driving with the permission of Mrs. Weitz, thereby bringing him within the

definition of an "insured" under the policy's omnibus clause.

## I.

■ The first issue to be considered is whether the North Carolina statute authorizes service of process on a nonresident owner of an automobile driven by a sub-permittee at the time of the accident. North Carolina Gen.Stat. § 1–105 (Supp. 1959) provides that process may be served on a nonresident in any action "growing out of any accident or collision in which said nonresident may be involved by reason of the operation by him, for him, and under his control or direction, express or implied, of a motor vehicle on such public highways of this State * * *."[1] In construing this statute, we are bound by the interpretation given it by the North Carolina courts. Three North Carolina cases require examination.

In Pressley v. Turner, 1958, 249 N.C. 102, 105 S.E.2d 289, service of process over a nonresident corporation, pursuant to N.C.Gen.Stat. § 1–105 (Supp.1959), was upheld on the finding that the driver who owned the car was acting as its agent. Important in this case is the language of the court. "Neither ownership nor physical presence in the motor vehicle is necessary for valid service. It is sufficient if the nonresident had *the legal right to exercise control* at the moment the asserted cause of action arose." Id., 249 N.C. at page 104, 105 S.E.2d at pages 291–292. (Emphasis supplied.) An owner may not unreasonably be presumed to have such right of control. See N.C.Gen.Stat. § 20–71.1.

In Ewing v. Thompson, 1951, 233 N.C. 564, 65 S.E.2d 17, the court upheld service over a nonresident owner of an automobile which had been operated by his son. While it is true that the court stressed the fact that the case fell within the "family purpose" doctrine of vicarious tort liability, the decision does not limit jurisdiction over the owner to that situation. Under this doctrine, a parent who owns an automobile which his family is permitted to use is held responsible for the torts of his minor children. Grier v. Woodside, 1931, 200 N.C. 759, 158 S.E. 491. Recognizing that minors are generally propertyless, the purpose of the rule is to enable the injured party to recover compensation from one whom it is not unreasonable to hold liable. 2 Harper & James, The Law of Torts 1419–1420 (1956); Prosser, Torts 369 (2d ed. 1955). This doctrine is not determinative in interpreting the jurisdictional statute where "control or direction" are the standards. While such "control or direction" was under the particular facts based on the "family purpose" doctrine, the decision does not stand as authority to limit "control or di-

1. The statute in pertinent part reads as follows:

"§ 1–105. Service upon nonresident drivers of motor vehicles and upon the personal representatives of deceased nonresident drivers of motor vehicles.—The acceptance by a nonresident of the rights and privileges conferred by the laws now or hereafter in force in this State permitting the operation of motor vehicles, as evidenced by the operation of a motor vehicle by such nonresident on the public highways of this State, or at any other place in this State, or the operation by such nonresident of a motor vehicle on the public highways of this State or at any other place in this State, other than as so permitted or regulated, shall be deemed equivalent to the appointment by such nonresident of the Commissioner of Motor Vehicles, or his successor in of- fice, to be his true and lawful attorney and the attorney of his executor or administrator, upon whom may be served all summonses or other lawful process in any action or proceeding against him or his executor or administrator, growing out of any accident or collision in which said nonresident may be involved by reason of the operation by him, for him, or under his control or direction, express or implied, of a motor vehicle on such public highways of this State, or at any other place in this State, and said acceptance or operation shall be a signification of his agreement that any such process against him or his executor or administrator shall be of the same legal force and validity as if served on him personally, or on his executor or administrator." N.C.Gen.Stat. § 1–105 (Supp.1959).

rection" to that precise situation. Mrs. Weitz's control over the car is not reduced by the fact that her son's permittee was driving and not the son. It will be recalled that in our case, the District Judge found that in turning the automobile over to her son, Mrs. Weitz expressly authorized him to permit others to drive it.

A situation factually closer, indeed practically identical, to the present case was before the court in Howard v. Sasso, 1960, 253 N.C. 185, 116 S.E.2d 341. A nonresident owner permitted her automobile to be driven in North Carolina by her son who loaned it to a fellow soldier who in turn loaned it to the driver allegedly responsible for the accident. In support of the court's jurisdiction, the plaintiff relied on the defendant's admitted ownership of the automobile and the provision of the North Carolina statute whereby ownership raises a rebuttable presumption that the car was driven with the "authority, consent, and knowledge of the owner." N.C.Gen.Stat. § 20–71.1. The trial court was sustained in upholding substituted service on the nonresident owner.

In light of these cases, it is concluded that service of process on Mrs. Weitz was authorized by the North Carolina law. The statute does not require that the owner be physically in a position to direct the driver's every move. Nor does it require that the driver be acting for the pecuniary benefit of the owner. The words "express or implied" suggest only a minimal connection between the driver and the owner which is satisfied if the owner, as in this case, has a legal right to control the operation of the automobile. The unlikelihood that the owner will in fact exercise his legal right is immaterial. After all, the evident purpose of the statute is to extend the state's judicial power broadly to permit North Carolina residents to acquire jurisdiction over nonresidents who may be held responsible for injuries or death caused by their automobiles. A narrow interpretation of the statute would defeat this purpose, and we perceive no disposition in the North Carolina court to interpret it narrowly.

II.

We turn next to the question of the state's constitutional power to apply the statute in the present circumstances. Traditionally the basis of in personam jurisdiction over a defendant was his physical presence within the forum state or his consent to its jurisdiction.[2] Under the famous dictum of Mr. Justice Field in Pennoyer v. Neff, 1877, 95 U.S. 714, 733, 24 L.Ed. 565, no other method of acquiring in personam jurisdiction could satisfy the due process clause of the Fourteenth Amendment. The rationale was supplied by Mr. Justice Holmes by his assertion that "the foundation of jurisdiction is physical power * * *." McDonald v. Mabee, 1917, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608 (dictum). The rule thus recognized led to the anomalous situation that a state was powerless to afford relief to its citizens when a nonresident, having committed a tort within the state, was no longer to be found within its borders; while, if a defendant could once be served with process while present within the state, no matter how fleeting that presence, the forum had jurisdiction to adjudicate any of his acts wherever committed.[3]

2. It has been suggested that the requirement of personal service cannot be traced beyond Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565. E. g., Ehrenzweig, Conflict of Laws 88–89 (1959). Other scholars have received his historical analysis with some skepticism. See Schlesinger, Methods of Progress in Conflict of Laws—Some Comments on Ehrenzweig's Treatment of "Transient" Jurisdiction, 9 J.Pub.L. 313, 317 (1960).

3. Some writers have proposed restricting, if not abrogating, "transient" jurisdiction. E.g., Ehrenzweig, Conflict of Laws 102–106 (1959); Ehrenzweig. The Transient Rule of Personal Jurisdiction: The "Power" Myth and Forum Conveniens, 65 Yale L.J. 289 (1956). See Schlesinger, Method of Progress in Conflict of Laws—Some Comments on Ehrenzweig's Treatment of "Transient" Jurisdiction, 9 J.Pub.L. 313 (1960).

With the increasing use of the automobile, the first part of the anomaly became intolerable. At least forty-nine of the fifty states have adopted statutes in an effort to cope with this problem.[4] New Jersey early enacted a law requiring a nonresident motorist using its roads to appoint the Secretary of State as his agent for the service of process. This was upheld in a prosecution against a New York resident who drove through New Jersey, but failed to make such appointment. Kane v. State of New Jersey, 1916, 242 U.S. 160, 37 S.Ct. 30, 61 L.Ed. 222. The Court reasoned that the required appointment, giving jurisdiction over the nonresident motorist, was not an unreasonable exercise of the state's police power to protect the "public safety." Id., 242 U.S. at page 167, 37 S.Ct. at page 31. A few years later a Massachusetts statute was upheld under which any nonresident motorist was, by the act of driving on that state's highways, deemed to have appointed the Secretary of State his agent to receive service of process. The stated reason was that "in the public interest the State may make and enforce regulations reasonably calculated to promote care on the part of all, residents and non-residents alike, who use its highways." Hess v. Pawloski, 1927, 274 U.S. 352, 356, 47 S.Ct. 632, 633, 71 L.Ed. 1091.

At the same time, in areas other than automobile litigation, the concepts underlying in personam jurisdiction of the courts were undergoing re-examination.[5] The fiction of consent has on analysis yielded to the realization that activities within the state are the true basis of jurisdiction. See International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 318, 66 S.Ct. 154, 90 L.Ed. 95. The Court later frankly declared that the jurisdiction of the forum state over a nonresident motorist was based not at all on consent. Olberding v. Illinois Cent. R. R. Co., 1953, 346 U.S. 338, 341, 74 S.Ct. 83, 98 L.Ed. 39.[6] No longer is jurisdiction limited to physical presence or consent. It is limited only by standards of fairness embodied in the due process clause of the Fourteenth Amendment.

In reality, two requirements are imposed by the due process clause upon a state's exercise of its jurisdiction over a nonresident. First, the statute authorizing jurisdiction must provide for the giving of adequate notice to the defendant. Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446. This presents no problem in the present case, for it is conceded that North Carolina makes provision for adequate notice and that Mrs. Weitz received notice by registered mail pursuant to the terms of the statute. N. C.Gen.Stat. § 1–105 (Supp.1959).

The second requirement is that the exercise of jurisdiction be reasonable. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316–320, 66 S.Ct. 154, 90 L.Ed. 95; Restatement (Second), Conflict of Laws § 74 (Tent. Draft No. 3, 1956). The test is stated by Mr. Justice Stone in International Shoe Co. v. State of Washington, supra, who declares, first in general terms, that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id., 326 U.S. at page

---

4. See Hawaii Rev.Stat. § 230–33 (1957); Note, 44 Iowa L.Rev. 384 (1959). Only Alaska seems to have no provision for substituted service on nonresident motorists.

5. Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (domicile as basis of jurisdiction); Henry L. Doherty & Co. v. Goodman, 1935, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097 (nonresident's agent sells securities with-

in the state); Nelson v. Miller, 1957, 11 Ill.2d 378, 143 N.E.2d 673 (single tortious act within the state); Dubin v. City of Philadelphia, Phil.County Ct. 1938, 34 Pa.Dist. & Co.R. 61 (Bok, J.) (ownership of realty within the state).

6. The case held that a nonresident's implied consent to service of process on the Secretary of State of Kentucky was not also consent to waive the federal venue requirements.

316, 66 S.Ct. at page 158. Later this general test is refined with the statement that "whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." Id., 326 U.S. at page 319, 66 S.Ct. at page 160. The meaning of due process in this area can be determined only by weighing the competing interests. Of course, Mr. Justice Stone in International Shoe was speaking about jurisdiction over corporations, but there is no reason why this approach is not equally applicable to jurisdiction over individuals. See Developments in the Law—State-Court Jurisdiction, 73 Harv.L.Rev. 909, 935–936 (1960). What is identical in both cases is the underlying reasoning. Therefore, what is required is an analysis and weighing of the interests of a defendant in not being called upon to defend in the forum, of a plaintiff in being able to acquire jurisdiction over a defendant in the place where the cause of action arose, and of a state in being able to open its courts to the particular lawsuit. See Restatement (Second), Conflict of Laws, § 84, comment c (Tent. Draft No. 3, 1956); Developments in the Law—State-Court Jurisdiction, 73 Harv.L.Rev. 909, 924–925 (1960).

What is the primary interest of a resident of Texas who is made a defendant in a North Carolina court? It is to avoid the inconvenience of having to defend in North Carolina. The trip would tend to disrupt the pursuit of his affairs at home. There is also the expense of the journey for litigant and counsel. Even if local counsel should be retained,

he would be a person with whom the defendant is unfamiliar. The inconvenience to the defendant is more likely to be important in the case of individuals than of corporations. In McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the Supreme Court upheld California's assertion of jurisdiction over a Texas insurance company where its only contact with the forum state was that it had mailed a policy and received payments from a single insured residing there. Insurance companies are constantly involved in law suits, while the hardship to an individual in having to travel to another state may be more severe.[7]

On the other side of the coin, what are the interests of the North Carolina claimant? He, likewise, would be inconvenienced if compelled to leave his home and to prosecute an action in Texas. But here more is involved than the plaintiff's inconvenience. Where an automobile accident occurs in North Carolina, most of the witnesses will be in that state. The cost of transporting them to Texas would in all probability be prohibitive and their willingness to travel doubtful. Depositions are less satisfactory than live testimony. A jury view of the scene of the accident would be practicable only if the trial were held in the state where the accident occurred. These additional advantages to the plaintiff are attainable without corresponding disadvantages to the defendant. Furthermore, other factors being equal, it is generally more desirable for an action to be tried in the state whose law is applicable.[8]

There is a third interest to be considered. The Supreme Court in Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.

7. In the ordinary case, extreme hardship to a defendant can be alleviated if the defendant removes to a federal court on the ground of diversity of citizenship, 28 U.S.C.A. § 1441, and then moves for a change of venue pursuant to 28 U.S.C.A. § 1404(a). The principle of forum non conveniens may also be available in some state courts. See Nelson v. Mil-

ler, 1957, 11 Ill.2d 378, 391, 143 N.E.2d 673, 680 (Schaefer, J.).

8. Both North Carolina and Texas would apply North Carolina law under the rule that the law of the place where the accident occurred governs. Goode v. Barton, 1953, 238 N.C. 492, 497, 78 S.E.2d 398, 402; see Vernon's Ann.Tex.Rev. Civ.Stat.Ann. art. 4678(1952); Hill v. Cheek, 5 Cir., 1956, 230 F.2d 104.

Ct. 1228, 2 L.Ed.2d 1283, said that the due process restrictions on state court jurisdiction "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States." Id., 237 U.S. at page 251, 78 S.Ct. at page 1238. This seems to be saying that the forum state must have some interest in being able to open its courts to the action. Unquestionably a state in which an automobile tort was committed has such an interest. This consideration was expressed by the Supreme Court in Hess v. Pawloski, 1927, 274 U.S. 352, 356, 47 S.Ct. 632, 633, 71 L.Ed. 1091: "Motor vehicles are dangerous machines; and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property." See Restatement (Second), Conflict of Laws, § 84, comments c, f (Tent. Draft No. 3, 1956). The state has a strong interest in being able to provide a convenient forum where its citizens may be able to seek, from the owner as well as from the actual operator, compensation for injuries that will often be extremely serious. Jurisdiction over the driver who inflicted the injury does not exhaust the state's interest; it is not pushing the matter too far to recognize that the state may also assert the jurisdiction of its courts over the owner who placed the vehicle in the driver's hands to take it onto the state's highways. Compare Young v. Masci, 1933, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158. In addition, knowledge by nonresident motorists that they are not amenable to suit in the foreign state may encourage negligent conduct. Such knowledge may likewise cause a relaxation of caution on the part of the automobile owners who authorize the use of their vehicles.

In Hess v. Pawloski, supra, jurisdiction was asserted over a nonresident motorist who was also the owner of the automobile. We are asked to go beyond that case and uphold North Carolina's jurisdiction over an automobile owner who had never come into the state. However, the momentary physical presence of the defendant within the state should not be controlling. Far more important are the consequences foreseeable from his authorizing the use of his automobile there. This is not an extreme holding and the principle has been deemed applicable in other instances where the owner of property causing damage was not present in the state when the damage was inflicted. For example, in personam jurisdiction was upheld over a nonresident owner of realty on a cause of action relating to that property. Dubin v. City of Philadelphia, Phil. County Ct. 1938, 34 Pa.Dist. & Co.R. 61 (Bok, J.). Similarly, Illinois has by statute asserted in personam jurisdiction over nonresidents liable as owners of real property.[9] The Restatement (Second), Conflict of Laws, § 84a (Tent.Draft No. 3, 1956), repeats this principle saying that "a state has judicial jurisdiction over an individual who owned a thing in the state for the purposes of any cause of action arising out of the thing within limitations of reasonableness appropriate to the relationship derived from the ownership of the thing."

We need not decide the correctness of applying the principle to these situations which are not before us. We merely hold that ownership of property, particularly that which is capable of inflicting serious injury, may fairly be coupled with an obligation upon the owner to stand suit where the property is or has been taken with his consent. Of course, this is so only if the state chooses by appropriate law to assert its jurisdiction over him in respect to liability arising out of the use of his property in that state.

This court's decision in Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 4 Cir.,

9. Ill.Stat.Ann. ch. 110, §§ 16, 17 (1956). "Sections 16 and 17 of the Civil Practice Act reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." Nelson v. Miller, 1957, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (Schaefer, J.).

1956, 239 F.2d 502, cited by the appellant, affords it no support. Jurisdiction by substituted service upon the defendant in that case was held invalid because it lacked sufficient contacts with North Carolina. The defendant had consummated a sale by delivery in New York and thereafter the plaintiff purchaser shipped the goods to its factory in North Carolina. We held that the mere fact that the seller was dealing with a North Carolina purchaser and could reasonably expect that the articles sold would be sent into North Carolina, was too faint a link to subject the defendant to North Carolina's jurisdiction. In the course of the opinion we took occasion to point out the distinction between the exercise of jurisdiction by substituted service on such a defendant and on a nonresident motorist who employs dangerous machinery in a negligent fashion while enjoying the privileges of the state's highways. Id., at page 508. The social importance of providing a remedy against both owners and drivers for injuries inflicted by the unceasing swarms of motor vehicles that daily travel on the state's highways is of a higher order than is found in cases like Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., supra.

The Supreme Court of North Carolina has likewise recognized the force of this distinction. It held in Putnam v. Triangle Publications, Inc., 1957, 245 N.C. 432, 96 S.E.2d 445, that the defendant's contacts with North Carolina were not sufficiently substantial to warrant the exercise of the state's jurisdiction over a foreign corporation in a libel suit. As we have seen, however, this did not prevent the court's upholding North Carolina's assertion of an interest and constitutional power to subject a negligent nonresident owner to its jurisdiction by substituted service. Howard v. Sasso, 1960, 253 N.C. 185, 116 S.E.2d 341; Ewing v. Thompson, 1951, 233 N.C. 564, 65 S.E.2d 17. We find nothing in either Erlanger Mills or in Putnam that militates against our holding here.

### III.

There remains only the question whether the insurance company is liable under the terms of the policy. Appellant claims that the policy is void because Mrs. Weitz was not the true owner of the automobile. If she was not the owner, then she violated a condition of the policy by stating that she was, and further, she may have had no insurable interest in the automobile. Appellant also argues from this hypothesis that she cannot have given Curcuro the necessary permission to drive the automobile within the meaning of the omnibus clause.

There was a detailed inquiry in the District Court into the circumstances of the purchase and financing of the automobile. While the proof was that the son supplied the money, it also appeared that the mother registered the automobile in her name and signed notes as principal, obligating herself to the bank for the future installment payments. In addition, she inspected the automobile before it was purchased and admonished her son before he left for North Carolina to take good care of the car and to watch whom he permitted to drive it. We believe that these facts support the District Judge's conclusion that Mrs. Weitz was the owner of the automobile.

We find no Texas court decision in point, but a Louisiana court, interpreting Texas law, held that a father was the owner of an automobile registered in his name for which he signed promissory notes, even though his minor son had paid the greater share of the consideration and had possession and use of the vehicle. Churchman v. Ingram, La.App. 1951, 56 So.2d 297. There is no substantial difference between that case and the present one, for while Mrs. Weitz's son made the payments, Mrs. Weitz, like Mr. Ingram, was the record owner and promissor of payment to the financing bank. Accord, Indiana Lumbermen's Mut. Co. v. Janes, 5 Cir., 1956, 230 F.2d 500 (Virginia law). Pacific Finance Corp. v. Gil-

kerson, Tex.Civ.App.1948, 217 S.W.2d 440 is distinguishable from the present case. There the certificate of title was in the minor son's name, and the father signed the notes and conditional sales contract only because the finance company refused to deal with a minor.

It follows from our holding that Mrs. Weitz owned the car, that she had authority under the omnibus clause to allow the son to give permission to Curcuro to drive the automobile. See Utica Mut. Ins. Co. v. Rollason, 4 Cir., 1957, 246 F.2d 105, 110; Costanzo v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 1959, 30 N.J. 262, 152 A.2d 589; Ryan & Howell, Coverage Arising from the Questions of Permissive Use or Agency, 26 Ins. Counsel J. 262 (1959). The express finding of the District Judge that she actually gave such permission has ample support in the record and cannot be upset.

Judgment affirmed.