**Larry GILLEN et al., Appellants,**

v.

**GLOBE INDEMNITY COMPANY,**
**Appellee.**

**No. 18550.**

United States Court of Appeals
Eighth Circuit.

May 16, 1967.

---

3. The district court opinion was cited with apparent approval in Tashire. See 87 S.Ct. 1199.

Fletcher Jackson, Howell, Price & Worsham, Little Rock, Ark., for appellants, Gene Worsham, Howell, Price & Worsham, Little Rock, Ark., and G. Thomas Eisele, Little Rock, Ark., on the brief.

James D. Storey, Little Rock, Ark., for appellee, Globe Indemnity Co.

No brief filed and no argument made for appellees, Carl F. Garrison and Suzy Garrison.

Before BLACKMUN, MEHAFFY and GIBSON, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

This is an appeal from the United States District Court for the Eastern District of Arkansas, and concerns the question of insurance coverage afforded a permittee of the named insured's general bailee under an omnibus insured clause. In a declaratory judgment action based upon diversity of citizenship the District Court, seeking to apply Arkansas law, decided that plaintiff, Globe Indemnity Company, was not obligated to defend an Arkansas state court action arising from an automobile collision between one, Larry Gillen, the permittee of the named insured's daughter, and one, Fred Mikoleit. Gillen and Mikoleit appeal from that decision.

There is very little dispute as to the facts of this case. Carl F. Garrison purchased a 1961 Chevrolet automobile, which was paid for by him and titled in his name. Garrison, on April 16, 1965, applied for, and was issued as the named insured, a personal liability policy on the automobile by appellee, Globe Indemnity Company. It was clear, however, that he purchased the car primarily for the use of his seventeen year old daughter, Suzy, who lived at home and used the car primarily to drive to and from school. This fact was known to the insurer and noted by it on the policy application.

The policy provided coverage, in addition to the named insured and household members, to "any other person using such automobile with the permission of the named insured, * * *." Though Suzy had general permission to use the insured automobile at her discretion, Mr. Garrison had instructed her not to allow anyone else to drive the car. This instruction was generally followed by Suzy, and to Mr. Garrison's knowledge Suzy abided by this admonition.

Suzy had a boy friend, Larry Gillen. Larry was attempting to obtain summer employment and had arranged to have an interview with Suzy's father, Mr. Garrison. The night before the interview was to take place Larry stayed with the parents of Suzy's girl friend. On the morning of the scheduled interview Suzy drove the insured car to her girl friend's house to pick up Larry. Larry, however, was not satisfied with his appearance and suggested that Suzy loan him the insured automobile so that he could drive to his home several miles away and change his clothes. He stated that he would drive back to Suzy's home, pick up Suzy, and they would go together to Mr. Garrison's place of business. Suzy reluctantly consented to the plan and allowed Larry to drive the car to his home.[1] While driving alone back to Suzy's house, Larry collided with an automobile driven by Fred Mikoleit. Mikoleit filed a personal injury action in an Arkansas state court against Larry. Thereafter, the insurer of the Garrison automobile, Globe Indemnity Company, filed a complaint in the Federal District Court asking for a declaration that the

---

1. Suzy testified that while driving Larry from her girl friend's home, she remarked that she had to do something to her hair, and Larry responded: "Well, why not let me stop off at the Riveria and let you out and go on with the car to the farm and change clothes and I will come back and get you and we will go to your father's office?" And she said, "Well, I am not sure it will be all right," and Larry replied, "Well, just this once I think it would be okay. I won't have a wreck or anything." And she said, "Well, all right."

automobile was being driven without the permission of the named insured, Carl F. Garrison, and consequently no coverage was afforded Larry Gillen under the policy, and that it had no duty to defend the state court action against Gillen. The case was tried without a jury before the Honorable Gordon E. Young. Judge Young granted plaintiff the declaration which it sought. Larry Gillen and Fred Mikoleit, the adverse parties in the state court action and co-defendants in this action, appeal this determination in favor of Globe Indemnity Company.

Simply stated in review, the facts are these: The policy in question provides protection to anyone using the automobile with the permission of the named insured. Garrison was the legal owner and named insured, and Suzy, his daughter, was the general permittee of Garrison. Without the express consent of Garrison and contrary to his instructions, Suzy permitted Larry, her boy friend, to use the insured car on an errand personal to him. While Larry was driving the insured car it collided with the Mikoleit vehicle.

The legal issue arising from these facts is simply this: Can Larry be said to have had "permission" of the named insured to drive this car? Or more precisely, under the exact facts of this case, is the permission given by the named insured to his daughter allowing her to use the car sufficient consent to make Larry's use of the car within the permission of the named insured?

██ A reading of the face of the policy clearly requires as a condition of coverage, "permission of the named insured." Thus the person seeking protection of such a clause must show that permission to drive the insured automobile was granted to him by the named insured. 7 Appleman, Insurance Law & Practice, § 4364. At first glance this may seem to be an impossible task for a second permittee who may have no connection whatsoever with the named insured. This apparently is made even more difficult by the basic rule which

states that permission by the named insured allowing another to use his car does not, of itself, authorize this person to allow a third party to drive the car. Sunshine Mutual Insurance Co. v. Mai, 169 F.Supp. 702, 705 (D.N.D., 1959), affd. sub nom. Peterson v. Sunshine Mutual Insurance Company, 273 F.2d 53 (8 Cir. 1959); Krebsbach v. Miller, 22 Wis.2d 171, 125 N.W.2d 408 (1963); 7 Appleman, Insurance Law & Practice, § 4361, pp. 284–288; 7 Am.Jur.2d Automobile Insurance § 116, p. 431; annot. 4 A.L.R.3rd 10, 17.

However, the initial appearance of harshness and rigidity of this general rule has been ameliorated in a large number of cases by the courts' ability to discover some form of "permission" flowing from the named insured to the second permittee.

In a few cases there is some form of express authority from the named insured to the first permittee, authorizing this permittee to loan the automobile to third persons. What appears to be a majority of the cases would hold that the third person's use with the permission of the first permittee having express authority to loan the automobile is use with permission of the named insured. Davis v. St. Paul-Mercury Indemnity Company, 294 F.2d 641 (4 Cir. 1961); Odden v. Union Indemnity Co., 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363 (1930); Mercer Casualty Co. of Celina, Ohio v. Kreamer, 105 Ind.App. 358, 11 N.E.2d 84 (1937). See also the dictum to this effect in Hays v. Country Mutual Insurance Company, 28 Ill.2d 601, 192 N.E.2d 855, 859 (1963); Anderson v. Adams, 148 So.2d 347, 351 (La.App.1962); Dodson v. Sisco, 134 F.Supp. 313, 317 (W.D.Ark., 1955). However, a few cases apply a very strict interpretation of "permission" and hold that the right to grant "permission" to use the insured auto is a personal right of the named insured which cannot be delegated to a permittee. "Permission," to be effective, must come directly from the named insured. Howell v. Accident & Casualty Ins. Co., 32 Tenn.App. 83, 221 S.W.2d

901 (1949); Fox v. Crawford, 80 N.E.2d 187 (Ohio App., 1947).

A much more common situation arises when the named insured allows another a relatively unrestricted use of the car but is silent as to whether the permittee is authorized to allow third parties to use it. A large number of cases, perhaps a majority, hold that a relatively unrestricted permission to use the insured automobile carries with it an implied authority from the named insured to allow third persons to use the car consistent with the original permission. The first permittee with unrestricted authority to use the car is said to have been placed in the shoes of the named insured, and the permission of the first permittee is deemed to be the permission of the named insured for the purposes of omnibus coverage. State Farm Mutual Auto Insurance Company v. Automobile Underwriters, Inc., 371 F.2d 999 (7 Cir. 1967); Pennsylvania Thresherman & Farmers' Mut. Cas. Ins. Co. v. Crapet, 199 F.2d 850 (5 Cir. 1952); United Services Automobile Ass'n v. Preferred Acc. Ins. Co. of N. Y., 190 F.2d 404 (10 Cir. 1951); Ohio Casualty Insurance Company v. Pennsylvania National Mutual Casualty Insurance Company, 238 F.Supp. 706 (D.Md.1965), affd., 352 F. 2d 308 (4 Cir. 1965); Hinchey v. National Surety Company, 99 N.H. 373, 111 A.2d 827 (1955); Krebsbach v. Miller, 22 Wis.2d 171, 125 N.W.2d 408 (1963); Baesler v. Globe Indemnity Co., 33 N.J. 148, 162 A.2d 854, 857 (1960) (dictum). However, there may be no such implication of authority when the first permittee's use is severely restricted as to time and place. Horn, By and Through Godwin v. Allied Mutual Casualty Company, 272 F.2d 76 (10 Cir. 1959); Anderson v. Adams, 148 So.2d 347 (La.App., 1962); Harper v. Hartford Accident & Indemnity Company, 14 Wis.2d 500, 111 N.W.2d 480 (1961).

Furthermore, an almost equal number of cases apply a strict and more narrow approach to the problem. These cases point out that the risk of the insurance company cannot be expanded by implying in the first permittee the power to supply the permission of the named insured, and that authority to delegate the use of an automobile to a third person is not a normal incident of even unlimited permission to use the automobile. Peterson v. Sunshine Mutual Insurance Company, 273 F.2d 53 (8 Cir. 1959) (applying N.D. law); Duff v. Alliance Mutual Casualty Company, 296 F.2d 506 (10 Cir. 1961); Ewing v. Colorado Farm Mutual Casualty Co., 133 Colo. 447, 296 P.2d 1040 (1956); Volk v. Cacchione, 395 Pa. 636, 150 A.2d 849 (1959); Hunton v. McCarvel, 65 Wash.2d 242, 396 P.2d 639 (1964). See, annot. 160 A.L.R. 1195, 1206 which interprets this to be the majority rule as of that date (1946). However, courts following this strict rule may modify their stand when it appears that the third party was using the car for the benefit of the first permittee or the named insured. National Farmers Union Property & Casualty Company v. Lukins, 329 F.2d 564 (8 Cir. 1964) (applying N.D. law).

So, if Arkansas were to take the narrow approach, we would need to go no further. Power to give the named insured's permission under this approach cannot be implied solely by the permittee's possession of the automobile. However, even if the narrow interpretations are rejected and the broad rules followed, it is still clear that one essential element is always necessary to find coverage, and that element is "permission." Sometimes the power to grant the named insured's permission is expressly given the first permittee. More often the power to grant the named insured's permission is implied, along with other factors, by the extent of the first permittee's authority to use the car. But, in all the cases some form of "permission" must be found to allow coverage.

"Permission", however, is extremely difficult to find, when, as in the case before us, the named insured expressly forbids the permittee to allow third parties to use the car. Certainly, there is no express authority to grant the named insured's permission. Furthermore, what

implications of authority residing in Suzy that might be derived from Suzy's broad right to use the car would probably be expressly negated by her father's one clear restriction. No one was to drive the car but Suzy. Under these circumstances the trial court found that Garrison gave no actual or implied consent for anyone other than Suzy to drive the Garrison automobile.

While there are no Arkansas appellate cases on this exact point of law, there can be no dispute that the trial court followed what is the clearly established majority view on this point. Royal Indemnity Company v. Clingan, 238 F.Supp. 448 (E.D.Tenn., 1965), affd. on this point, 364 F.2d 154 (6 Cir. 1966); Baesler v. Globe Indemnity Co., 33 N.J. 148, 162 A.2d 854 (1960); Carlton v. State Farm Mutual Automobile Insurance Company, 309 P.2d 286 (Okl.1957); Standard Accident Ins. Co. v. New Amsterdam Casualty Company, 249 F.2d 847, 853 (7 Cir. 1957) (dictum); Annot., 4 A.L.R.3rd 15, 61; 160 A.L.R. 1195, 1206; 7 Am.Jur.2d, Automobile Insurance § 116, p. 434. This majority position is well set forth in the decision relied upon by the trial court. On very similar facts, Dodson v. Sisco, 134 F. Supp. 313, 317 (W.D.Ark., 1955) stated:

> "The original permittee who has been given permission to use the automobile but had been expressly forbidden to delegate this authority cannot do so, and the use of the car by the second permittee in violation of the named insured's express order is not within the protection of the policy."

The sole Arkansas appellate case in this general area would seem to confirm this holding. On significantly different facts the Arkansas Supreme Court in Allstate Insurance Company v. Mathis, 232 Ark. 484, 339 S.W.2d 132 (1960), approved an instruction which would deny omnibus coverage if the jury found that the named insured forbade the first permittee to allow the second permittee to drive the insured car.

The result reached in Dodson v. Sisco is somewhat harsh in that a borrower of an insured automobile from its ostensible owner is denied financial protection solely on the basis of communications, unbeknown to him, between the actual owner and the first permittee. Furthermore, because of these private communications the motoring public is denied financial protection against losses caused by a driver who is otherwise legally and properly in possession of an insured automobile.

Perhaps as a consequence of the harshness of this approach, many courts, when given the opportunity, have been able to discover an implied consent from the named insured even in the face of express prohibitions against the loaning of the insured automobile. If the first permittee is actually in the car, or the car is being used for the benefit of the first permittee or of the named insured, or if the first permittee has an equivalent of equitable title and has unfettered control over the daily use of the car outside of the surveillance of the named insured, or if the named insured is aware of past violations of instructions but allows the permittee to retain possession, or when an emergency arises, regardless of the express prohibitions against third party use, many courts will imply a consent on the part of the named insured for the third party's use. See, State Farm Mutual Automobile Insurance Company v. Williamson, 331 F.2d 517 (9 Cir. 1964); Allstate Insurance Company v. Fidelity & Casualty Company, 73 N.J.Super. 407, 180 A.2d 168 (1962); Pollard v. Safeco Insurance Company, 52 Tenn.App. 583, 376 S.W.2d 730 (1963); Brooks v. Delta Fire & Casualty Company, 82 So.2d 55 (La.App., 1955).

However, none of the above factors which might justify implication of permission regardless of contrary prohibitions is present in the case before us. Suzy was not in the car. The car was not being used for the benefit of Suzy or Mr. Garrison. As she lived at home, Suzy's possession was under the daily control and surveillance of her father.

Suzy had generally abided by her father's prohibitions against third party use, and Mr. Garrison was unaware of any past violations of this rule. The trip by Larry was not prompted by any necessity or emergency. Consequently, though there are precedents for a court that follows the liberal view to imply permission on the part of the named insured, regardless of his express directions to the contrary, none of these recognized precedents are applicable to the present factual situation. To apply coverage in the case before us we would have to take an additional step and say that relinquishing control of an insured vehicle to one that could reasonably be foreseen to loan the car to a third person, contrary to instructions, implies permission by the named insured to the third party use. We know of no court that has gone this far, and the Arkansas courts have given no indication that they would place themselves in a minority position by adopting such a rule.

As a consequence the trial court must be affirmed. The permission of the named insured was not expressly given, nor under the broadest application of the existing law can such permission be implied from the present circumstances. With this ruling, however, we must add a word of caution. The decisions in this area often appear to be delicately balanced on the peculiar facts of the individual cases. The change of a few facts might be enough to imply consent in the named insured. Therefore, this case, as all cases in this area, must be limited to the facts presented. The addition or subtraction of any one of the many factors present could easily have changed the holding herein.

Furthermore, we do not propose to establish the law of Arkansas on this matter. An attempt has been made under the necessity of our dual system of jurisprudence to anticipate what the law of Arkansas might be, but this is little more than a fiction. The questions of risks and insurance protection are questions perhaps as strongly influenced by a state's own notion of public welfare and social policy as by decisions of sister jurisdictions. We deplore the role of having to decide cases that may be precedent in the establishment of purely local law and policy. It would have been preferable for this action to have been brought in the state courts in order that a definitive state ruling might have been obtained. For when presented with this or a like question, the Arkansas courts may wish to take an entirely different approach, and rightfully so. In establishing their policy they may decide to go farther than we did and rule that any permittee has the protection of such an omnibus clause. Or, on the other hand, they may want to take a strict view of "permission" and decide that the dictum found herein, reciting an accepted rule of implied permission, unfairly expands the risks of insurance companies. At any rate, the presently undeclared law of Arkansas on this issue might, and should be free to develop in an entirely different manner if and when the Arkansas courts are given the opportunity to rule on these questions.

Though we have no assurance that the case before us would be approached by the Arkansas courts in a manner similar to our approach herein, certainly there is nothing to indicate that Arkansas courts would follow a rule other than the apparently unanimous position on this point announced by Dodson v. Sisco. Therefore, at this time the action by the trial court on the facts of this case appears to be a correct application of the law, and its judgment in favor of plaintiff, Globe Indemnity Company, is affirmed.

Judgment affirmed.