No. 47,334

LORRAINE O. GANGEL, and FRANCIS E. GANGEL, and FRANCINE R. GANGEL, a minor, by her mother and next friend, Lorraine O. Gangel, and MICHAEL V. HALL, a minor, by his mother and next friend, Lorraine O. Gangel, and VICKI A. HALL, a minor, by her mother and next friend, Lorraine O. Gangel, *Appellees,* v. JAMES A. BENSON and WILLIAM R. HUSEBY and RICHARD M. HUSEBY, *Defendants;* and JAMES A. BENSON, *Appellee,* v. ALLSTATE INSURANCE COMPANY, *Appellant;* and JAMES A. BENSON, *Third Party Plaintiff,* v. FARMERS INSURANCE COMPANY, INCORPORATED, *Third Party Defendant.*

(523 P. 2d 330)

Opinion filed June 15, 1974.

*Barton Brown,* of Overland Park, argued the cause and was on the brief for the appellant.

*Richard L. Roberts,* of Olathe, argued the cause, and *George A. Lowe,* of Olathe, and *Joseph Anderson,* of Mission, were with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: The roots of this lawsuit extend far back to Sunday, April 21, 1968, when about 11 p. m. a collision occurred on Metcalf Avenue in Overland Park, near 78th Street. On the fateful day James A. Benson, a minor, was driving a 1961 Dodge convertible toward the north, while a 1964 Oldsmobile driven by Francis E. Gangel, in which his wife and three children were passengers, was proceeding south on Metcalf. The two cars collided and the occupants of the southbound Oldsmobile filed this action to recover damages for personal injuries received. Named as defendants are James A. Benson, the driver of the northbound Dodge car, Richard M. Huseby, the titled owner of the Dodge, William R. Huseby, the minor son of Mr. Huseby, and Allstate Insurance Company, Mr. Huseby's insurance carrier. Answers were filed by the Husebys and Benson generally denying liability, while Allstate filed a motion to dismiss.

James A. Benson, or Jim, the driver of the Huseby car besides filing an answer, filed a third-party petition against Allstate Insurance Company, alleging that Allstate had issued a liability policy covering the Huseby car which was in effect at the time of the accident, and that Allstate was legally responsible for any judgment which might be rendered against him. Benson also filed a third-party petition against his own father's insurance carrier, Farmers Insurance Company, Inc., contending he was covered as an insured under that policy, as well.

A bifurcated hearing was held on the issues of coverage. The trial court ruled that Benson came within the coverage of the Allstate policy but was not an insured under the policy issued by Farmers.

Allstate has appealed and the sole issue before us is whether Jim Benson is covered under the omnibus clause of Allstate's in-

surance policy. Questions relating to liability and damages remain undecided at the trial court level, awaiting our decision in the present appeal.

Two points are raised by Allstate. They relate (1) to the construction of the omnibus clause of the policy and (2) to the sufficiency of the evidence to establish that Benson was an insured person under that clause as properly construed.

The omnibus clause is not set out verbatim in either the record or the briefs, but the parties appear to agree that the pertinent provision is as follows:

"Section I—Liability Protection

Part I

"Automobile liability insurance  *  *  *  When your car injures or kills anyone or damages property  *  *  *  THE FOLLOWING PERSONS ARE INSURED UNDER THIS PART  *  *  *

3. Any other person with respect to the owned automobile, provided the actual use thereof is with the permission of the named insured;  *  *  *"

In ruling that James Benson was covered as an insured under the omnibus clause of the Allstate policy, the trial court found that he had the implied consent of Richard M. Huseby and Ellen Huseby (Richard's wife) to use, drive and operate the 1961 Dodge automobile at the time of the collision with plaintiffs' automobile.

Among the conclusions of law entered by the trial court appears the following:

"4. Any member of an insured's household now has authority to extend permission to operate an automobile which will be binding upon the insurer of such car under the omnibus provisions of the policy."

We believe it obvious that this conclusion was predicated on our recent decision in *Alliance Mutual Cas. Co. v. Hartford Accident & Indemnity Co.*, 210 Kan. 769, 504 P. 2d 161, inasmuch as the court stated in its memorandum opinion that the case "appears to be controlling."

At this point it becomes advisable to relate some of the testimony with respect to coverage. Richard M. Huseby had purchased the Dodge during the fall of 1967, primarily for William's use in getting to school and to work. The car was titled in Mr. Huseby's name and he insured it with Allstate. William, or Bill, paid for gas, oil and minor maintenance, while his father took care of major maintenance. There was evidence that Bill was not to reimburse his father for the cost of the car. Both Mr. Huseby and Bill testified that Bill was expressly prohibited from permitting anyone else

to drive the car and that this rule never changed. On one occasion after Benson had been in an accident—resulting in his removal from the coverage of Farmers' policy—Mr. Huseby specifically told Bill that Jim should not be allowed behind the wheel of the car.

On Sunday, April 21, 1968, Mr. and Mrs. Huseby were in Philadelphia and a party was in progress at the Huseby residence. It was attended by four of Bill's boy friends, including James Benson, and by one of Bill's girl friends. In the course of the afternoon and evening Jim Benson borrowed the car to go to the French Market. He borrowed it again to pick up a date—whom he found was not at home—and thereafter he used the car to take two of the other boys to get something to eat. Returning to the Huseby house he found Bill was gone, and after waiting some time he started to take one of the boys home. The accident occurred on this trip. Reference will later be made to other facts gleaned from the testimony.

Allstate challenges the legal conclusion reached by the trial court that any member of an assured's household has authority to extend permission to use an automobile which would be binding upon the insurer under the omnibus provision. We believe the challenge has merit. The opinion in the *Alliance* case was not intended by this court to establish such a rule of law, even though language to such general effect may be found in the dissent.

Basically the *Alliance* decision was bottomed on the doctrine of implied consent, which is to the effect that the permission by the named insured to use the car need not be expressly given but that it may be implied by conduct, including lack of objection, signifying acquiescence or consent on the part of the insured. This is a principle to which the Kansas court has staunchly adhered in litigation involving insurance coverage pursuant to the omnibus clause of an insurance policy. (*Gibbs v. Central Surety & Ins. Corp.*, 163 Kan. 252, 181 P. 2d 498; *National Farmers Union Property & Cas. Co. v. Farm Bureau Mutual Ins. Co.*, 194 Kan. 93, 397 P. 2d 81; *Burks v. Whalen*, 208 Kan. 222, 491 P. 2d 940; *Horn v. Allied Mutual Casualty Company*, 272 F. 2d 76.) In the *Alliance* case, the court stated:

". . . This court follows the general rule that the permission referred to in the omnibus clause may be express or implied. It may be established by a showing of a course of conduct or relationship between the parties, which signifies acquiescence or consent of the insured. . . ." (p. 773.)

From a factual standpoint the *Alliance* case is readily distinguish-

able from the situation prevailing in the present action. There, consent was inferred from knowledge on the part of the named insured, Jack Seamens, that his son, George, who lived away from home while attending college at Fort Hays State, was seeking to sell the car which had been provided for his use. George had discussed selling the car with his father and assumed his father had given approval if the price was right. Although the father had forbidden George to permit others to drive the car, a majority of the court opined that he had "relaxed his prohibition to George insofar as the sale of the auto was concerned." (p. 774.) George proceeded to let a prospective buyer, Harrison, drive the car home, and Harrison, sad to say, met up with an accident. This court rationalized:

"It is unnecessary to discuss and distinguish the many cases cited by the parties in their briefs. It is sufficient to say the court is of the opinion that, under the facts and circumstances as disclosed by the record and the findings of the district court, George had express and Harrison had implied permission of the named insured to drive the Continental and that such use was covered by the omnibus clause of Alliance's policy. No other conclusion may be drawn from the evidence than that if Jack Seamens did not expressly authorize George to permit Harrison to drive the Continental, he impliedly permitted Harrison to do so. . . .

"The use to which George put the Continental in the loan to Harrison was to enable him to drive it home so that his stepfather could make an inspection of the automobile. That use was a reasonable foreseeable one to be anticipated by Jack Seamens. . . . [I]t necessarily follows the named insured clothed George with ostensible, if not actual, authority to engage in the simple transaction of permitting Harrison to operate the automobile for purposes of consummating a sale. . . ." (pp. 773-775.)

When fairly analyzed, the *Alliance* decision must be deemed to rest on permission implied from the particular circumstances existing in that case, and not on consent implied from the existing family relationship. We are aware of no authority which would infer permission from a close family or personal relationship alone. Quite to the contrary, the cases which deal directly with the question appear to hold that family relationship in and of itself is not sufficient to justify a finding of consent by implication. (4 A. L. R. 3d, Anno. 10, 34: Omnibus Clause—Consent, § 3 [c].) *Allstate Ins. Co. v. Hodsdon*, 92 N. H. 233, 29 A. 2d 782, is representative of those cases in which the question has arisen. In *Allstate* the relationship between the insured and the first permittee was that of father and son. In deciding that a third party was not covered

as an insured under the omnibus clause, even though he was using the car with permission granted by the son, the New Hampshire court said that "the mere relationship of father and son . . . furnished no basis for an inference" that there was an agreement or understanding authorizing the son to permit the third party to use the vehicle. To similar effect, see *Fox v. Crawford*, 50 Ohio L. Abs. 553, 80 N. E. 2d 187, where the relationship was husband and wife, and *Sunshine Mutual Insurance Co. v. Mai*, 169 F. Supp. 702, affd., *Peterson v. Sunshine Mutual Insurance Company*, 273 F. 2d 53, a brother to brother combination. In the *Fox* case, the Ohio court said that the omnibus coverage clause of the policy gave the wife, the record owner of the car and the named insured, "discretionary power to select additional insureds but she could not delegate such discretionary power" to her husband.

We are constrained to hold that the trial court erred in its fourth conclusion of law. However, this does not summarily dispose of the appeal. As we have already said, the trial court found that James Benson had implied consent to use the car, and we are required to determine whether there is substantial competent evidence, apart from the family relationship, to support the finding. The court's finding is as follows:

"James Benson had the implied consent of Richard M. and Ellen Huseby to use, drive and operate the 1961 Dodge automobile at the time of the collision with plaintiffs' automobile at or near 78th and Metcalf in Overland Park, Kansas on April 21, 1968."

In order that Benson be covered under Allstate's policy, the consent required was that of the insured, Mr. Huseby, not that of Bill. Hence Allstate argues that the finding is not supported by substantial evidence showing permission, implied or otherwise, on Mr. Huseby's part. The trial court made no specific finding as to whether Mr. Huseby forbade Bill to let anyone else use the car but the evidence is substantial and undisputed that Bill was prohibited from loaning the car to anyone, and we shall proceed on that basis.

The general rule relating to the coverage afforded a second permittee under the omnibus coverage clause where the first permittee was prohibited from allowing others to use or drive the insured vehicle is set forth in 4 A. L. R. 3d, Anno.: Omnibus Clause—Consent, § 6 [a], 11 [a], in these words:

"It has generally been held or recognized that a second permittee using the automobile solely for his own purposes is not entitled to protection under the

omnibus clause where the named insured expressly prohibited the initial permittee from allowing other persons to use or operate the car." (p. 61.)

Cases from many jurisdictions are cited in support of the text on this point.

Because a rigid narrow application of the rule might lead on occasion to harsh or socially unpleasant results, and because of difficulties inherent in refuting or countering testimony concerning admonitions given the first permittee, a number of courts, including our own, have gone to considerable lengths in finding a basis for implying consent on the part of the named insured despite the caveat. In *Gillen v. Globe Indemnity Company*, 377 F. 2d 328, where the facts are much like those before us, the federal court has taken note of this tendency to dilute or mitigate the severity of a strict and inflexible enforcement of the rule. The car in the *Gillen* case was purchased by the insured primarily for the use of Suzy, his 17-year old daughter, who lived at home and was permitted to use the car at her discretion, except that she was forbidden to allow anyone else to drive. On one occasion Suzy failed to heed the prohibition and permitted her boy friend, Larry, to use the car to drive home for a change of clothing before appearing for a job interview. Larry had an accident on the way back and a declaratory judgment action was filed to determine whether coverage was afforded Suzy's boy friend under the omnibus clause of her father's insurance policy.

In an opinion supplying a negative response to the question presented, the court cited the following passage from *Dodson v. Sisco*, 134 F. Supp. 313, 317 (W. D. Ark., 1955):

" 'The original permittee who has been given permission to use the automobile but had been expressly forbidden to delegate this authority cannot do so, and the use of the car by the second permittee in violation of the named insured's express order is not within the protection of the policy.' " (p. 332.)

The court then went on to say:

"The result reached in Dodson v. Sisco is somewhat harsh in that a borrower of an insured automobile from its ostensible owner is denied financial protection solely on the basis of communications, unbeknown to him, between the actual owner and the first permittee. Furthermore, because of these private communications the motoring public is denied financial protection against losses caused by a driver who is otherwise legally and properly in possession of an insured automobile.

"Perhaps as a consequence of the harshness of this approach, many courts, when given the opportunity, have been able to discover an implied consent from the named insured even in the face of express prohibitions against the loaning of the insured automobile. If the first permittee is actually in the car, or the car is being used for the benefit of the first permittee or of the named

insured, or if the first permittee has an equivalent of equitable title and has unfettered control over the daily use of the car outside of the surveillance of the named insured, or if the named insured is aware of past violations of instructions but allows the permittee to retain possession, or when an emergency arises, regardless of the express prohibitions against third party use, many courts will imply a consent on the part of the named insured for the third party's use. See, State Farm Mutual Automobile Insurance Company v. Williamson, 331 F. 2d 517 (9 Cir. 1964); Allstate Insurance Company v. Fidelity & Casualty Company, 73 N. J. Super, 407, 180 A. 2d 168 (1962); Pollard v. Safeco Insurance Company, 52 Tenn. App. 583, 376 S. W. 2d 730 (1963); Brooks v. Delta Fire & Casualty Company, 82 So. 2d 55 (La. App., 1955).

"However, none of the above factors which might justify implication of permission regardless of contrary prohibitions is present in the case before us. Suzy was not in the car. The car was not being used for the benefit of Suzy or Mr. Garrison. As she lived at home, Suzy's possession was under the daily control and surveillance of her father. Suzy had generally abided by her father's prohibitions against third party use, and Mr. Garrison was unaware of any past violations of this rule. The trip by Larry was not prompted by any necessity or emergency. Consequently, though there are precedents for a court that follows the liberal view to imply permission on the part of the named insured, regardless of his express directions to the contrary, none of these recognized precedents are applicable to the present factual situation. To apply coverage in the case before us we would have to take an additional step and say that relinquishing control of an insured vehicle to one that could reasonably be foreseen to loan the car to a third person, contrary to instructions, implies permission by the named insured to the third party use. We know of no court that has gone this far, and the Arkansas courts have given no indication that they would place themselves in a minority position by adopting such a rule." (pp. 332, 333.)

The court concluded its opinion by stating that permission could not be implied from the circumstances surrounding that case, given the broadest application of existing law.

We view the decision in *Gillen* as persuasive. The court's compendium of factors which might justify permission by implication *vis-a-vis* a contrary prohibition is comprehensive and peculiarly appropriate to the case at hand. Bill Huseby, of course, was not riding in the car when the accident occurred nor was the car being used for his benefit or purpose or for the benefit of his father. Eighteen-year old Bill Huseby lived at home, and hence, was subject to the day by day control and surveillance of Mr. and Mrs. Huseby. Although Jim Benson had used the car on a couple of prior occasions the testimony of Mr. and Mrs. Huseby, of Bill Huseby, and of Jim Benson himself, establishes that neither of Bill's parents were aware of those occasions. Mr. and Mrs. Huseby, and Bill also, testified that neither his mother or father knew of the car having been used

by anyone in violation of Mr. Huseby's instructions. Jim Benson's trip on the night of April 21, 1968, was not prompted by any emergency or necessity. No facts or circumstances are shown from which it can be said that Mr. Huseby should have anticipated that Bill would disobey his father's express injunction with respect to the use of the car. The facts in this case dovetail with those present in *Gillen v. Globe Indemnity*, supra.

We have not overlooked the numerous citations proffered by the plaintiffs, but find most of them wide of the mark. They deal, for the most part, with situations where either there had been no express prohibition imposed on the first permittee or the circumstances came with the exceptions spelled out in the *Gillen* case. However, we are aware of *Odolecki v. Hartford Accident & Indemnity Co.,* 55 N. J. 542, 264 A. 2d 38, which plaintiffs cite, where the New Jersey court held that where the owner of a car voluntarily turns over the keys of his car to another, the extent of the permission granted is irrelevant, so far as the insurance carrier is concerned. The nub of the decision is expressed on page 550:

". . . We think that once the initial permission has been given by the named insured coverage is fixed, barring theft or the like. . . ."

This rule was later followed by the Illinois Court of Appeals in *Country Mutual Ins. Co. v. Bowe,* 13 Ill. App. 3d 386, 300 N. E. 2d 274.

The rationale of *Odolecki* is clearly that of public policy, which the court professed to divine by reference to several New Jersey statutes. We would agree this is an area in which the legislature should act if the omnibus clause is to be eviscerated to the extent outlined by the New Jersey court. In *Allstate Ins. Co. v. Hodsdon,* supra, an argument was made that the omnibus clause was designed for the protection of those lawfully traveling upon the public highway, and that the policy should be held as affording coverage so long as the chain of express permissions was not broken by a conversion or an illegal taking. The New Hampshire court responded that an argument such as this "might well be addressed to the legislature in advocacy of a change in the Financial Responsibility Act." (p. 234.) We look upon this approach as judicious.

That the Kansas legislature is fully qualified to act in this area of the public interest is borne out by its recent enactment of the so-called "No Fault" insurance legislation. We believe it not only

proper but highly fitting to leave for legislative consideration the public policy arguments advanced by plaintiffs in this case.

In our opinion the finding by the trial court that James A. Benson had the implied permission of Richard M. Huseby, the named insured, to use the Huseby car at the time of the accident is not supported by substantial competent evidence, and the same must be set aside. Hence, the judgment against Allstate Insurance Company as to coverage must be reversed and the trial court is directed to enter judgment in favor of Allstate.

OWSLEY, J., dissenting: I disagree with the majority opinion. I would adopt the rule stated in *Odolecki v. Hartford Accident & Indemnity Co.*, 55 N. J. 542, 264 A. 2d 38; *State Farm v. Zurich Am. Ins. Co.*, 62 N. J. 155, 299 A. 2d 704; and *Maryland Cas. Co. v. Iowa Nat. Mut. Ins.*, 54 Ill. 2d 333, 297 N. E. 2d 163. The rule referred to is stated in the *State Farm* case:

". . . [I]f the first user in fact has permission from the named insured, lack of permission, express or implied, of such named insured for use by a later permittee is irrelevant to coverage, short of theft or the like. . . ." (p. 167.)

One of the basic weaknesses in the rule reported by the majority opinion is the fact the owner of an insured automobile may, subsequent to an accident, decide whether he wants the driver of the insured automobile to be covered by his insurance policy. He can state that permission was given, thus binding the coverage, or he can state that permission was not given, thus eliminating the recovery. It appears to me the right to recover from personal injuries resulting from an automobile collision should not depend on the whims of the insured owner. The belated statement of the owner as to permission should be minimized and give way to the public interest. It should be the policy of this state to liberally construe liability insurance policies to effect the broadest range of protection to users of the highways.

The majority opinion indicates changes in the law relative to the omnibus clause of insurance policies should be made by the legislature. I do not agree. The construction of insurance policies has long been the function of the courts. If such construction needs modification the courts should act to correct it and not avoid their responsibility by asserting it is a legislative matter.

Much has been written on this subject and the courts have taken

many diverse views as disclosed by the cases cited in the annotation in 4 A. L. R. 3d 10. I recognize the majority opinion is in accord with the law of this state, but I hope to raise some questions as to the wisdom of its perpetuation.